[No. G011755. Fourth Dist., Div. Three. Dec. 10, 1992.]

ROBERT ROGALSKI, Plaintiff and Respondent, v.
NABERS CADILLAC et al., Defendants and Appellants.

**COUNSEL**

Rudolph & Rohr, William J. Rohr, Greines, Martin, Stein & Richland and Marc J. Poster for Defendants and Appellants.

Mundell, Odlum & Haws, Thomas C. Mundell and James A. Odlum for Plaintiff and Respondent.

## OPINION

**WALLIN, J.**—Nabers Cadillac and Richard Nabers (collectively Nabers unless otherwise indicated) appeal a default judgment entered against them in favor of Robert Rogalski for $500,000 in compensatory damages and $58,299.90 in attorney fees and costs. Nabers contends the trial court abused its discretion when it refused to set aside their defaults. (Code Civ. Proc., § 473.)[1] We agree and reverse.

Rogalski filed a complaint against Nabers and its employee Sam Snead, alleging age discrimination in violation of Government Code section 12941, breach of contract, breach of implied covenant of good faith and fair dealing and wrongful termination.[2] The gravamen of Rogalski's complaint was that he had been continuously employed by Nabers since 1967 and was fired in 1990 solely because of his age, 55 years at the time. He sought damages in excess of $500,000, punitive damages, attorney fees and costs.

Rogalski's complaint was served on all defendants on May 20, 1991. Stanley Mashita, Nabers's chief financial officer, contacted Nabers's insurance broker, Terry Cressman, who indicated the complaint was covered by Nabers's insurance policy with Golden Eagle Insurance Company. Cressman sent the summons and complaint to Golden Eagle on May 28 instructing it to provide a defense for Nabers.

On June 5, Chris Kazarian, a litigation examiner for Golden Eagle, wrote to Mashita advising him that the complaint had been received and that Kazarian would initially be responsible for the matter. It was Mashita's understanding that Golden Eagle would file a response, and he so advised Richard Nabers.

On June 15 Kazarian telephoned Mashita and stated he was not sure there was coverage. He did not advise Mashita that Golden Eagle would not be filing a response to the complaint.

On June 25, after the time to respond had expired, Rogalski's attorney wrote to each defendant advising them that no response had been filed and

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Following entry of the default judgments Rogalski dismissed his complaint without prejudice as to Snead and the Doe defendants.

that Rogalski would enter defaults if responses were not filed within five days. Mashita forwarded the letter to the broker, Cressman, who reiterated that there was coverage and told Mashita that he would make sure Golden Eagle handled the matter.

On July 2 Kazarian called Rogalski's attorney. He stated that Golden Eagle was still investigating coverage and had not yet retained counsel to respond to Rogalski's complaint. Kazarian requested an additional 10 days to respond. Rogalski's attorney refused the 10-day extension, but told Kazarian he would not file the default papers until noon the following day.[3]

On the morning of July 3, Kazarian advised Mashita that Golden Eagle was denying coverage, it would not defend Nabers and it had not filed a response to the complaint. He did not tell Mashita that Rogalski's attorney gave a noon deadline for filing a response.[4]

Mashita immediately retained Nabers's current attorney, William Rohr. Rohr called Rogalski's attorney at 2:30 p.m. to obtain an extension, only to learn the default papers had just been filed. Rogalski refused to stipulate to set aside the defaults.

On July 31 Nabers filed its motion to set aside the defaults. While the motion was pending, a default prove-up hearing was held on August 19. On August 27 a default judgment was entered awarding Rogalski $891,050 in compensatory damages and $25,000 for emotional distress damages. The court subsequently denied Nabers's motion to set aside the defaults but reduced the damages to $500,000, the amount requested in the complaint.

 Nabers contends the trial court abused its discretion when it refused to set aside the defaults. Section 473 permits the trial court to "relieve a party . . . from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." The motion lies within the discretion of the trial court. However, " 'the trial court's discretion is not unlimited and must be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' [Citation.] The law strongly favors trial and disposition on the merits. Therefore, any doubts in applying section 473 must be resolved in favor of the party seeking relief. When the moving party promptly seeks relief and there is no prejudice

---

[3]Orange County Superior Court rule 1109 allows the parties to stipulate to no more than 15 extra days to file a responsive pleading. On July 2 the response was already 12 days tardy.

[4]Subsequent to these events, Golden Eagle apparently had a change of heart regarding its position and posted the necessary undertakings on appeal.

to the opposing party, very slight evidence is required to justify relief. We will more carefully scrutinize an order denying relief than one which permits a trial on the merits." (*Mink* v. *Superior Court* (1992) 2 Cal.App.4th 1338, 1343 [4 Cal.Rptr.2d 195].)

Nabers contends it reasonably believed its insurer, Golden Eagle, was handling the matter and would respond to the complaint in a timely fashion. It is uncontroverted that Golden Eagle was aware of the filing deadline and no excuse has been proffered for its failure to file a response. The trial court specifically found the failure to file a response was not the result of Golden Eagle's mistake or neglect but was a deliberate decision made by Golden Eagle. Golden Eagle may well have acted deliberately, indeed reprehensibly, in failing to either file a responsive pleading or give Nabers adequate warning that it would not do so. That does not, however, justify denying relief to this defendant, who was so obviously caught unaware by his insurer's actions. In ruling the trial court failed to consider Nabers's excusable neglect in filing a response.

The trial court relied upon *Don* v. *Cruz* (1982) 131 Cal.App.3d 695 [182 Cal.Rptr. 581] in refusing to set aside the defaults. In *Don* the defendant in a personal injury action was served with a summons and complaint. Not quite two months later, no responsive pleading having been filed, the defendant's default was entered. Over six months later the plaintiff requested a default judgment hearing be set, following which the defendant sought to have the default set aside under section 473. In support of his section 473 motion, the defendant submitted his declaration stating "that he had notified his insurance carrier of the accident and of the service of process and had relied upon the carrier to defend the action." (131 Cal.App.3d at p. 700.) There was no explanation as to why the carrier had not filed an answer.

The court concluded this was not enough, the defendant also had to show the insurer's inaction was excusable. (131 Cal.App.3d at p. 702.) Were the rule otherwise, an insurer could "willfully or recklessly ignore filing deadlines with impunity, shielding itself behind the blamelessness of its insured while it makes a shambles of orderly procedure." (*Id.* at p. 701.)

*Don* analogized the relationship between the insured and its carrier to the relationship between a litigant and his or her attorney, noting the general rule is that an attorney's inexcusable negligence is usually charged to the client and the client is relegated to a malpractice action against the attorney. In short, under the reasoning of *Don*, Nabers's only hope for relief lies in its bad faith action against Golden Eagle.

Preliminarily, we note that since *Don* was decided the Legislature has made a *very* significant amendment to section 473 which makes its reasoning

questionable as applied to this case. Under the new statute the client is no longer charged with the inexcusable negligence of his or her attorney. The 1988 amendment to section 473 added the following provision: "Notwithstanding any other requirements of this section, the court *shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate [the resulting default or default judgment.]" (§ 473, amended by Stats. 1988, ch. 1131, § 1, p. 3631; Stats. 1991, ch. 1003, § 1, italics added.) When a default is the attorney's fault the court must grant a timely noticed motion for relief. The only limitation is when the court finds the default was not in fact the attorney's fault, for example when the attorney is simply covering up for the client. (§ 473.)[5]

Furthermore, in analogizing to the attorney-client relationship, *Don* failed to carry the analogy out to its logical conclusion which is applicable here. *Don* failed to recognize that the courts have long afforded relief to litigants whose attorney's neglect amounts to "positive misconduct" toward the client. " 'The exception is premised upon the concept the attorney's conduct, in effect, *obliterates the existence of the attorney-client relationship*, and for this reason his negligence should not be imputed to the client.' " (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 [187 Cal.Rptr. 592, 654 P.2d 775]. See also *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 353 [66 Cal.Rptr. 240]; *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 391 [38 Cal.Rptr. 693].) That is precisely what happened here. Golden Eagle repeatedly led Nabers to believe it would respond to the complaint and then abruptly abandoned Nabers without taking *any* steps to protect Nabers's rights. In these circumstances, under the reasoning of *Don*, the "attorney-client" relationship between the two was obliterated and Golden Eagle's conduct should not be imputed to Nabers.

"When the moving party promptly seeks relief and there is no prejudice to the opposing party, very slight evidence is required to justify relief." (*Mink* v. *Superior Court, supra*, 2 Cal.App.4th at p. 1343.) Before filing the defaults Rogalski was aware Golden Eagle was considering rejecting Nabers's tender of defense. Within a matter of minutes or at most a few hours after filing the defaults, Rogalski's attorney was contacted by Nabers's newly retained counsel, Rohr, advising him of the situation, that Nabers had just been told that morning that Golden Eagle would not defend and had not filed an answer. When Rogalski refused to set aside the defaults, Nabers promptly filed the motion to set aside.

---

[5]Attorney Rohr filed an affidavit stating the defaults were the result of surprise and neglect. However, he was not representing Nabers at the time the defaults were obtained.

Rogalski contends he has suffered prejudice in several ways. First, he was put to the "cost and burden of opposing [Nabers's] motion for relief." Second, he was injured by the delay in the case, which he describes as the time between when a response was due, June 1991, and the time the motion to set aside the defaults was heard, October 1991, during which time he was unemployed and forced to live off his savings. Third, he was forced to reveal his theories and evidence at the default judgment prove-up hearing. Last, before obtaining the default judgment he dismissed all of the unserved Doe defendants and "[a] serious statute of limitations problem would have been presented, however, if the default had been set aside and [Rogalski] sought to bring such parties into the action."

We are unpersuaded. Had Rogalski stipulated to set aside the defaults, none of the alleged prejudice would have resulted. He can point to absolutely no prejudice which resulted from the time period between when the response was due and 13 days later when the defaults were taken and he learned Nabers had been the victim of gross negligence by its insurer. The only true prejudice to Rogalski is that he will now have to go back and try the case on the merits. But since the law strongly favors trial and disposition on the merits, there is no prejudice. The trial court abused its discretion.[6]

During oral argument Rogalski was asked if the defaults were set aside what conditions should be imposed. Section 473 allows the court to impose just conditions in setting aside a default. Such conditions might include the attorney fees and costs incurred by the plaintiff in obtaining the default judgment and a maximum of $1,000 in sanctions. Rogalski requests he be awarded *all* his attorney fees and costs including the fees and costs incurred in obtaining the defaults, defending the motion to set aside and responding to the appeal, an amount which exceeds $50,000. He also requests sanctions of $25,000 be imposed, payable to this court and the trial court, for the burden placed upon it by this appeal and the proceedings below. Next he contends he is entitled to interest of between 7 and 10 percent per annum on the $891,050 default judgment for the past 16 months and finally he requests a bond of $1.5 million be posted by Nabers to secure any judgment which he might obtain in a trial on the merits.

We find Rogalski's requests outrageous to say the least, given the circumstances before us. Within hours after filing the defaults, Rogalski was contacted by Nabers's counsel advising him of the circumstances of Nabers's abandonment by Golden Eagle and asking that the defaults be set aside.

[6]Because we reverse, we need not address Nabers's remaining contentions that the default judgment must be reversed because Rogalski failed to file a statement of damages (§ 425.11) and the award of attorney fees and costs was inappropriate because the amounts were not specified in the complaint.

Rogalski refused. A few weeks later the motion to set aside was filed. The only delay in this action attributable to Nabers's conduct is that of a few weeks in filing its answer. Nabers cannot be asked to bear the entire economic burden of prosecuting a motion which should have been granted and an appeal which is meritorious. We remand the matter to the trial court with instructions that the defaults be set aside on the condition that Nabers pay to Rogalski his attorney fees and costs incurred in *obtaining* the defaults only.

While generally the prevailing party is entitled to recover its costs on appeal, we have wide discretion to grant or withhold costs. "In any case in which the interests of justice require it, the reviewing court may make any award or apportionment of costs it deems proper." (Cal. Rules of Court, rule 26(a).) In exercise of this discretion, reviewing courts have gone so far, on occasion, as to order the prevailing party to pay the appeal costs of the losing party when the underlying cause of the appeal was the prevailing party's own mishandling of its case. (See *Dobbins* v. *Hardister* (1966) 242 Cal.App.2d 787, 798 [51 Cal.Rptr. 866]; *Campbell* v. *Veith* (1953) 121 Cal.App.2d 729, 735 [264 P.2d 141].) Here we have concluded the trial court should have granted Nabers's motion to set aside the defaults and reverse with instructions to do so. Therefore, this appeal has become interlocutory in nature. Although Nabers is the prevailing party on this appeal, it is not in the interests of justice to award Nabers its costs at this time. This appeal was necessitated, at least in part, by Nabers's own failure to timely file a response. In this case, we conclude it is appropriate to delay the award of costs for this appeal until a final determination of the case on its merits. At such time the trial court may award the party who ultimately prevails its costs for this appeal.

The judgment is reversed and remanded with instructions. No costs are awarded at this time.

Moore, Acting P. J., and Sonenshine, J., concurred.

A petition for a rehearing was denied January 7, 1993.