[No. A080474. First Dist., Div. Two. June 16, 1998.]

LEE R. STAFFORD et al., Plaintiffs and Appellants, v.
TOAN MACH, Defendant;
ALLSTATE INSURANCE COMPANY, Intervener and Respondent.

COUNSEL

Albert E. Levy, Cotter & Del Carlo and Richard A. Canatella for Plaintiffs and Appellants.

Ropers, Majeski, Kohn & Bentley, George G. Weickhardt and Pamela J. Zanger for Intervener and Respondent.

OPINION

HAERLE, J.—

## I. INTRODUCTION

Appellants (Staffords) seek reversal of the trial court's order setting aside a default and a default judgment under section 473 of the Code of Civil Procedure[1] in favor of Allstate Insurance Company (Allstate) in a suit brought by the Staffords against and eventually settled with Allstate's insured. They contend the trial court abused its discretion by granting relief when Allstate waited to file its motion on the last day of the six-month limitation period provided by section 473 without an adequate explanation to justify the prolonged delay. We agree and accordingly reverse the order setting aside the default and default judgment.

## II. FACTS AND PROCEDURAL HISTORY

On January 23, 1996, a car driven by defendant Toan Mach struck the Staffords' car. The Staffords, an elderly couple, sustained various personal injuries and property damage as a result of the collision. Soon thereafter the Staffords hired Attorney Richard Canatella to represent them in connection with the accident.

Mach was insured by Allstate at the time of the accident. Canatella wrote to Allstate and informed them of his representation, and also requested a statement of Mach's automobile policy coverage and confirmation that Mach admitted fault for the accident. Allstate's claims department acknowledged Canatella's representation in a letter dated February 2, 1996. One week later, Allstate also acknowledged that Mach was at fault.

On June 24, 1996, Canatella made a policy limits demand to Allstate on behalf of the Staffords. Allstate's claims department acknowledged receipt

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

of this settlement demand on June 26, 1996, and then forwarded the case to Willie Roberson, an Allstate claims analyst, for review. After two months had passed without word from Roberson, Canatella called Roberson on September 9, 1996, to inquire about the status of the case. Roberson did not return the call. Canatella then left three more messages during the next week, which Roberson also failed to return. Finally, Canatella wrote Roberson a letter, confirming the four phone calls and requesting a status report. Roberson still did not respond.

On October 18, 1996, the Staffords filed a complaint for negligence against Mach Toan, also known as Dennis Chang, also known as Jim Wong. A process server for the Staffords attempted personal service of the summons and complaint on Mach at his residence, 1210 45th Avenue in San Francisco, five times between October 30 and November 15, 1996. On the sixth attempt on November 18, 1996, Mach answered the door, but did not reveal his identity. The process server reported that "an Asian male answered the door" and when the server asked for Mach, the male "began asking a lot of questions such as why [the server] was asking for the subject and who sent [the server]." The server then informed the male that he had legal documents for Mach and asked him to show identification. The male said he never heard of Mach before, refused to show identification, and threatened to call the police. The server then "announced drop service" and left the papers with him. On the proof of service filed with the court, the server noted that the person he served was "John Doe, co-occupant, (Asian M, 5'6", 150 lbs, 30-40 YR, Blk Hair)." On November 20, 1996, the server mailed the summons and complaint to Mach at the same address. On December 30, 1996, Canatella filed an amendment to the complaint, declaring that the true name of the defendant was Toan Mach, not "Doe" as previously stated.

Mach declared that he delivered the summons and complaint to an Allstate agent, Priscilla Lau, who then forwarded them to Roberson. At that time, Mach informed Lau that he had received these papers in the mail.[2] Roberson had a conversation with Mach on December 18, 1996, during which Mach apparently claimed not to have been "personally served" with the papers.[3] Roberson also noted that Mach has some difficulty understanding English. Roberson informed Mach that Allstate could not answer the complaint or

---

[2] Mach later stated, in an affidavit prepared by Canatella, that he had been "personally served" with the summons and complaint on November 18, 1996. The trial court noted these factual discrepancies and it appears that it did not find Mach to be particularly credible.

[3] In the same affidavit, Mach denies ever having this conversation with Roberson and similarly denies ever telling him that he was never "personally served." He did not, however, deny that he refused to give his name to the process server.

hire an attorney to represent him until Mach was personally served, and that, if and when he was personally served in the future, he should send the papers to Allstate. Other than speaking to Mach, Allstate undertook no other investigation into whether service of process was properly effectuated.

As requested by the Staffords, a default was entered in San Francisco Superior Court on December 31, 1996. A hearing date regarding entry of judgment was set for February 13, 1997,[4] and a notation of that date appeared on the notice of default. The default and notice of the February 13 hearing was mailed to Mach at his San Francisco address and to Allstate, under the assigned claim number, at its South San Francisco address where Roberson worked. Mach received this notice of default in the mail and claimed to have personally delivered a copy of it to Lau at Allstate's 19th Avenue, San Francisco office. He declared that Lau informed him she would forward the papers to Roberson at the South San Francisco office and that Allstate would appoint counsel to represent him. Lau admitted to receiving an envelope that appeared to have been sent by mail and forwarding it to Allstate's claims department, but denied telling Mach that the company would appoint counsel to represent him.[5] Roberson claimed to have spoken to Mach in the middle of January and to have discussed the "legal papers" which Mach had recently received. Roberson stated that he asked Mach to send him the papers, but that Mach did not comply. Roberson denied receiving any notice of the default or default judgment date.

The superior court entered a default judgment against Mach on February 13. The court found that Mach had been properly served, notice of the default and court judgment hearing had been mailed to both Mach and Allstate, and the Staffords were entitled to a judgment against Mach in the amount of $440,000. Notice of entry of the default judgment was mailed on February 13, both to Mach at his residence and to Allstate at its South San Francisco address, under the assigned claim number. Canatella also mailed Roberson a letter on the same day, informing him of the default judgment and demanding that Allstate issue a draft for the judgment amount within 30 days. Roberson admitted to receiving this letter and claimed that this was the only notice of the default judgment he had ever received. Roberson never responded to the letter.

---

[4] All further dates are in 1997 unless otherwise noted.

[5] It is unclear, because of the conflicting testimony, whether Mach actually delivered the notice to Lau. Mach claimed to have delivered papers to Lau on two occasions: the summons and complaint on November 24, 1996, and the notice of default on January 2. Lau declared that Mach, or a friend of his, delivered one set of papers to her on only one occasion around December 18, 1996.

On May 6, the Staffords modified the default judgment of February 13 to include the name "Quy Mach" as a cojudgment debtor under the judgment.[6] On May 19, Canatella wrote Roberson again, urging Allstate to pay the policy limits, which Roberson had yet to provide. Once more, Roberson failed to respond. The Staffords then attempted to enforce the judgment against Mach by recording an abstract of the judgment against Mach's family's residence located at 1210 45th Avenue in San Francisco. On June 10, Mach agreed to assign his bad faith cause of action against Allstate to the Staffords in exchange for their agreement not to execute the default judgment against him.

On June 30, attorneys for Allstate filed motions to intervene and to set aside the default and default judgment pursuant to section 473. At the same time, and over Mach's objections, Allstate-appointed counsel for Mach also filed motions to quash service of the summons and complaint and to set aside the default and default judgment. On July 22, the trial court granted Allstate's motion to intervene and set aside the default and default judgment as to Allstate, but not as to Mach. Notice of entry of the order in favor of intervener Allstate was served on September 8. The Staffords timely filed this appeal.

### III. DISCUSSION

#### A. *Standard of Review*

It is clearly established that "[a] motion for relief under section 473 is addressed to the sound discretion of the trial court and an appellate court will not interfere unless there is a clear showing of an abuse." (*Davis* v. *Thayer* (1980) 113 Cal.App.3d 892, 904 [170 Cal.Rptr. 328].) The discretion conferred upon the trial court, however, is not a " ' "capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' [Citations.]" (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 [187 Cal.Rptr. 592, 654 P.2d 775] (*Carroll*).)

It is also the policy of the law to favor, whenever possible, a hearing on the merits. (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr.

---

[6]There appears to be substantial confusion as to the true name of the defendant. This modification of the judgment was an apparent attempt to name the correct defendant, inasmuch as the Staffords believed this new name was another of Mach's several aliases. At no time, however, has there been any question that the defendant in the Staffords' suit was Allstate's insured.

902, 749 P.2d 339].) "Appellate courts are much more disposed to affirm an order when the result is to compel a trial on the merits than when the default judgment is allowed to stand." (*Id.* at p. 478.) These policies favoring relief from default and deference to the trial court's exercise of discretion do not, however, "transform appellate courts into mere spectators." (*Iott* v. *Franklin* (1988) 206 Cal.App.3d 521, 527 [253 Cal.Rptr. 635].) "However strong the preference for a trial on the merits, there are limits to that preference and however great is trial court discretion, there are bounds to that discretion." (*Id.* at p. 527.)

**B.** *The Trial Court Abused Its Discretion in Granting Allstate Relief From the Default and Default Judgment Under Section 473*

Section 473, subdivision (b), provides that a court may, on such terms as may be just, relieve a party or his legal representative from default entered against him through his mistake, inadvertence, surprise, or neglect. Application for such relief must be made "within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken."

Under the statute and in addition to the necessity of excusing the original default by a sufficient showing of "mistake, inadvertence, surprise, or neglect," the application must also be made within a "reasonable time" within six months after the party becomes aware that a default has been entered against it. (§ 473, subd. (b); *Jade K.* v. *Viguri* (1989) 210 Cal.App.3d 1459, 1473 [258 Cal.Rptr. 907].) This court has held that what a "reasonable time" is in any case depends primarily on the facts and circumstances of each individual case, but definitively requires a showing of diligence in making the motion after the discovery of the default. (*Kendall* v. *Barker* (1988) 197 Cal.App.3d 619, 624-625 [243 Cal.Rptr. 42] (*Kendall*).) In other words, the moving party must not only make a sufficient showing of "mistake, inadvertence, surprise, or neglect" in order to excuse the original default, but must also show diligence in filing its application under section 473 after learning about the default. If there is a delay in filing for relief under section 473, the reason for the delay must be substantial and must justify or excuse the delay.

Allstate argues that its inaction, inaction which resulted in the entry of default against its insured, was the result of its claims adjuster's belief that valid service of the summons and complaint upon its insured was never effectuated. Allstate also contends that the delay in filing for relief from that default was the result of the same belief. Allstate argues alternatively that, because service of process was defective, the default judgment was void *ab*

*initio* and it was, therefore, entitled to challenge it at any time, regardless of diligence in seeking to set it aside within the six-month period proscribed by section 473. Because we need not decide if Allstate met the requirements of section 473 if it is correct in its alternative contention, we address that alternative first.

Contrary to Allstate's contention, substantial evidence is found in the record to support the trial court's implicit finding that the summons and complaint was in fact properly served upon Mach, in the form of substitute service pursuant to section 415.20.[7] ■ When evidence presented below is conflicting, an appellate court must presume that " ' " 'the court found every fact necessary to support its order that the evidence would justify. So far as it has passed on the weight of evidence or the credibility of witnesses, its implied findings are conclusive.' " ' " (*Taylor-Rush* v. *Multitech Corp.* (1990) 217 Cal.App.3d 103, 110 [265 Cal.Rptr. 672], quoting *Kulko* v. *Superior Court* (1977) 19 Cal.3d 514, 519, fn. 1 [138 Cal.Rptr. 586, 564 P.2d 353], overruled on other grounds by *Kulko* v. *California Superior Court* (1978) 436 U.S. 84 [98 S.Ct. 1690, 56 L.Ed.2d 132].) " '[W]here there is substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed' " on appeal. (*Ibid.*)

Section 415.20 provides in part: "If a copy of the summons and of the complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and of the complaint at such person's dwelling house . . . in the presence of a competent member of the household . . . who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint . . . to the person to be served at the place where [the copies] were left." (§ 415.20, subd. (b).)

■ " ' "Ordinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." [Citation.]' " (*Bein* v. *Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387, 1391-1392 [8 Cal.Rptr.2d 351], quoting *Espindola* v. *Nunez* (1988) 199 Cal.App.3d 1389, 1392 [245 Cal.Rptr. 596].) If the form of substituted service is " ' "reasonably calculated to give an interested party actual notice of the proceedings and an opportunity to be heard . . . the traditional notions of fair play and substantial justice implicit in due process are satisfied." . . .' [Citations.]" (*Bein* v. *Brechtel-Jochim Group, Inc., supra,* 6 Cal.App.4th at p. 1392.) The pre-1969

---

[7]Although not expressly stated, the court must have so concluded because it did not remove the default judgment against Mach. It would not have been able to reach this result if it had found that service was never effectuated.

service of process statutes requiring strict and exact compliance have now been more liberally construed to effectuate service if actual notice has been received by the defendant. (*Ibid.*)

In this case, a process server for the Staffords made six attempts at personal service at Mach's residence. On the sixth attempt, on November 18, 1996, Mach answered the door but did not reveal his identity. The process server reported that "an Asian male answered the door" and, when the server asked for Mach, the man "began asking a lot of questions such as why [the server] was asking for [Mach] and who sent [the server]." The server then informed the man that he had legal documents for Mach, and asked him to show identification. The man refused and threatened to call the police, so the server "announced drop service" and left the papers with him. The server then mailed the summons and complaint to Mach at the same address two days later.

We note that the defendant in this case was *actually* served by this process, he did not claim that he failed to receive notice of service, and he forwarded these papers to Allstate. On December 30, 1996, the Staffords returned and filed the summons along with the process server's proof of service, declaring that "substitute service" was made on a co-occupant and competent member of the household, at the given residence address. Allstate undertook no investigation and sought no legal opinion to confirm the adjuster's view that service was not properly effectuated. Based on these facts, there was sufficient evidence in the record to support the trial court's implicit finding that service was proper.

■ Because service was properly effectuated, Allstate's avenue of recourse was to satisfy the requirements for relief under section 473, including the requirement that the motion be brought diligently. ■ Where a party has filed a motion for relief after an extended delay without any adequate excuse therefor, it is an abuse of discretion for a trial court to grant relief under section 473. (*Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523 [190 P.2d 593] (*Benjamin*).) In *Benjamin*, our Supreme Court found that the trial court abused its discretion when it set aside a default judgment because a defendant's section 473 motion had not been filed within a "reasonable time" where the defendant's attorney, without explanation, delayed for more than three months in filing the motion after learning of the entry of default. (31 Cal.2d at pp. 531-532.) The court found that, even though there was a separate reasonable ground to excuse the defendant's conduct to the point of entry of default judgment (his secretary failed to forward the summons and complaint to his attorney), the defendant's attorney took no action to set aside the default judgment until three months after he became aware of the

judgment. Because the defendant's attorney gave no excuse for the three-month delay, the court held that the trial court had abused its discretion and consequently reversed the trial court's grant of relief. (*Id.* at pp. 532-533.)

The *Benjamin* court also noted that no court to date had set aside a default where there were unexplained delays of anything approaching three months after full knowledge of the entry of the default. (*Benjamin, supra,* 31 Cal.2d at p. 529.) It appears from our independent review of the case law that this same three-month unofficial 'standard' remains true today. (*Billings* v. *Health Plan of America* (1990) 225 Cal.App.3d 250, 258, fn. 5 [275 Cal.Rptr. 80] [delays of three months or more routinely result in denial of relief where there is no satisfactory explanation for the delay].)[8] We have not found any case where relief from default judgment has been deemed proper where there was an extended period of delay and little or no explanation.

For example, in *Kendall* we reversed the lower court's granting of the defendant's motion to set aside its default judgment upon concluding that the moving party had not supported its claim of mistake, inadvertence or excusable neglect with competent evidence and the moving party had not explained a six-month delay in moving to set aside the default. (*Kendall, supra,* 197 Cal.App.3d at pp. 624-625.) We held that the trial court had abused its discretion by granting relief based upon such an inadequate showing. (*Id.* at p. 623.)

Respondent relies on a series of cases such as *Waite* v. *Southern Pacific Co.* (1923) 192 Cal. 467 [221 P. 204] (*Waite*), *In re Marriage of Jacobs* (1982) 128 Cal.App.3d 273 [180 Cal.Rptr. 234], *Berman* v. *Klassman* (1971) 17 Cal.App.3d 900 [95 Cal.Rptr. 417], and *DeMello* v. *DeMello* (1954) 124 Cal.App.2d 135 [268 P.2d 26], where orders vacating defaults were deemed proper despite extended periods of delay in filing a section 473 motion. These cases, however, are inapposite because in each the moving party presented the court with substantial reasons to justify or excuse the delay. In *Waite,* for example, the defendant did not file its motion to vacate the default judgment until more that five months until after it was entered, but provided the court with the explanation that, during this time, the defendant was "acting upon its honest belief that the state court had no jurisdiction of the action," and the opposing parties were continuing to litigate this issue in

---

[8]*Billings* v. *Health Plan of America, supra,* 225 Cal.App.3d 250, was superseded in part by statute as noted in *Tustin Plaza Partnership* v. *Wehage* (1994) 27 Cal.App.4th 1557, 1563-1564 [33 Cal.Rptr.2d 366]. Effective January 1, 1993, section 473 was amended to include language that made it mandatory for a court to relieve a party from default of dismissal due to attorney mistake, inadvertence, surprise or neglect. To the extent that *Billings* had held that section 473 did not provide relief from an attorney-caused dismissal, it was thus overruled legislatively.

federal court throughout this entire period. (*Waite, supra,* 192 Cal. at pp. 469-471.)

In *In re Marriage of Jacobs,* the court affirmed a lower court's grant of relief from default when a wife filed her section 473 motion one day less than six months after the entry of an interlocutory judgment. (*In re Marriage of Jacobs, supra,* 128 Cal.App.3d at p. 280.) The court found that the wife's motion was filed within a reasonable time, taking into consideration all of the circumstances including the wife's initial doubts about the validity of the judgment, her attorney's refusal to continue to represent her, the time she needed to obtain new counsel, conduct an investigation of the case, and prepare her motion papers. (*Id.* at pp. 280-281.) Because the wife was obliged to perform many tasks before being able to file her motion, the delay until the end of the six-month limitation period was "reasonable" under the circumstances. (*Ibid.*)

Allstate's authorities simply reiterate the general rule that the longer the delay in bringing the motion, the more substantial the justification for the delay must be in order for relief to be appropriately granted. In this case, however, Allstate delayed for a lengthy period and failed to provide a substantial excuse for the delay. Allstate filed a motion to intervene and set aside the default pursuant to section 473 on June 30. This was six months to the day after the default was entered and four and one-half months after it became aware of the default judgment.[9] Allstate maintains that, because the claims adjuster had concluded that the judgment was void due to his belief that service of process was never properly effectuated, the judgment was subject to attack at *any* time. This excuse, however, has nothing whatsoever to do with whether Allstate exercised diligence in filing its motion to set aside the default. Regardless of the bona fides of Allstate's belief, it was required to use diligence in invoking section 473. The record is devoid of any evidence justifying such a long delay. Indeed, based on the record before us, the delay in filing appears to have been largely a tactical decision.

As the trial court pointed out at the hearing for relief from default, Mach did mislead Allstate regarding the validity of service by telling the claims adjuster that he was never "personally served." Allstate's conduct, however, was far from diligent. Allstate undertook no investigation regarding the propriety of service. Instead, it relied upon representations from an insured

---

[9]The record contains conflicting evidence regarding when Allstate became aware that the Staffords had taken its insured's default. While the trial court did not explicitly set forth a finding on this point, the record strongly indicates that it concluded that Allstate had knowledge of the default on or about December 31, 1996, and that its motion was brought just barely within section 473's six-month period.

who its adjuster knew had difficulty with the English language. Moreover, Allstate did not promptly appoint counsel or move to quash service. As a result, a default and default judgment were entered against its insured. Even after receiving notice of the judgment, Allstate did not move to quash service, and waited over four and one-half months, until its insured's home was threatened and he had entered into a settlement agreement, before it took any action. In context, Allstate's excuse is suspect and insufficient to justify the lengthy delay in filing its section 473 application. The facts of this case are simply not analogous to cases where relief has been granted late in the limitations period and then upheld based upon a substantial excuse.

Allstate's conduct is, instead, more like that of the defendant corporation in *Khourie, Crew & Jaeger* v. *Sabek, Inc.* (1990) 220 Cal.App.3d 1009 [269 Cal.Rptr. 687] (*Khourie*). In that case, our colleagues in Division One held that, where service has in fact been properly effectuated, a defendant corporation cannot use its erroneous belief to the contrary as an excuse for delaying to file an application under section 473. (220 Cal.App.3d at p. 1015.) In *Khourie*, the defendant corporation claimed it had not been properly served the summons by substitute service and filed a motion for relief from default judgment on the grounds that it was never properly served and/or that it reasonably failed to respond to the notice that the plaintiffs intended to take its default because a principal of the corporation was reasonably mistaken in believing service was not effective. (*Id.* at pp. 1012-1013.) The defendant's motion to set aside the default judgment was not filed until over three weeks after the date the default was entered. The court found that, because substitute service was in fact effective, the defendant received actual notice of the summons by mail, and was personally informed by the plaintiffs that they intended to take default, the delay was not supported by a valid excuse. (*Id.* at pp. 1014-1015.) Indeed, the court agreed with the plaintiffs that the defendant " 'sat on his hands at the same time he thumbed his nose at the judicial process.' " (*Id.* at p. 1015, fn. 3.)

While Allstate is obviously an insurer and not a defendant, the *Khourie* case demonstrates the necessity of exercising reasonable diligence in both seeking to prevent or vacate a default despite a belief that service was not properly effectuated. While Allstate's position as an insurer might support a conclusion that a longer delay than that in *Khourie* was reasonable, the facts in this case demonstrate that Allstate basically sat back and waited for the Staffords to attempt to execute the judgment, thereby thumbing its nose at the judicial process.

The transcript from the hearing suggests that the trial court essentially ignored the diligence requirement for the favorable exercise of its discretion.

Specifically, the court stated, "And this motion is not untimely, it's brought within six months. . . . Why do we have a six-month time frame if we don't have a six-month time frame? I agree that some diligence on their part is required. And—but the vast majority of the case law says you have to balance all of the equities. You know, and all of the equities say that this is an insurance company that should be entitled to defend this case on the merits." Despite the lip service paid to the diligence requirement, this statement demonstrates that the trial court abused its discretion by failing to determine whether the statutory requirement of diligence was met prior to granting the requested relief.

Finally, Allstate also argues (albeit briefly) that because the Staffords did not file any counterdeclaration alleging prejudice or injustice from a trial of the case upon its merits, it was only required to provide "very slight" evidence in order to justify a court in setting aside the default. Whether or not the Staffords were prejudiced, however, "does not obviate a showing of compliance with the 'reasonable time' requirement in making the motion." (*Benjamin, supra,* 31 Cal.2d at p. 531.) ■ A court cannot set aside a default or default judgment simply because the opposing party has not been prejudiced. (*Carroll, supra,* 32 Cal.3d at p. 900.)[10]

■ We conclude, therefore, that Allstate did not take steps "within a reasonable time" to set aside the default and default judgment. It follows that the trial court abused its discretion in granting Allstate's motion. To hold otherwise, in light of the extreme delay and the absence of any satisfactory explanation, would empower the trial court to dispense with the "reasonable time" requirement of the statute. (*Benjamin, supra,* 31 Cal.2d at p. 532.)

C. *Allstate's Insured's Default Was Not Entered Based on Any Mistake of His Attorney and Allstate Was Required to Exercise Diligence in Filing Its Motion Under Section 473*

Allstate contends that no showing of diligence pursuant to section 473 was required, because the court is mandated to grant relief when default is entered against a party due to an *attorney's* mistake, inadvertence, surprise or excusable neglect. Whether or not it is an accurate restatement of the law, we find Allstate's assertion simply inapplicable to the facts at hand.

---

[10]Moreover, contrary to Allstate's contention, prejudice is manifest here. Because of Allstate's delay, its insured entered into a settlement with plaintiffs. Based upon the existence of this agreement, Allstate moved to disqualify the Staffords' counsel on appeal. We denied that motion. A similar motion can be anticipated in the trial court if the default is lifted and the case proceeds to trial. The expense and delay attributable to this procedural issue are, even if they prevail, prejudicial to the Staffords, who are eligible for trial preference due to their advanced age and declining health.

Section 473, subdivision (b), states in relevant part: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an *attorney's* sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate" any default or default judgment against his or her client, "unless the court finds that the default . . . was not in fact caused by the *attorney's* mistake . . . ." (Italics added.)

The statute requires the trial court to find that the default was *actually* caused by the attorney's mistake, inadvertence, surprise or neglect. (*Todd* v. *Thrifty Corp.* (1995) 34 Cal.App.4th 986, 988 [40 Cal.Rptr.2d 727].) In the case at bar, default was entered against Allstate's insured almost six months before any attorney was assigned to the case. Any mistake Allstate may have made contributing to the entry of default was the fault of an *insurer*, *not any attorney*. Moreover, no *attorney* affidavit admitting fault was ever presented to the court, as required by the statute.

Allstate relies on *Rogalski* v. *Nabers Cadillac* (1992) 11 Cal.App.4th 816, 820-821 [14 Cal.Rptr.2d 286] (*Rogalski*) in arguing that the mandatory portion of section 473 is satisfied by a declaration of an insurer, acting in effect as its insured's attorney, declaring that it was guilty of mistake, inadvertence, surprise or neglect in the entry of an insured's default judgment. Nowhere in *Rogalski*, however, does the court declare or even imply that a declaration of fault by a nonattorney employee of an insurance company is sufficient to trigger the mandatory attorney fault provision of section 473.[11] Indeed, the absence of such a pronouncement is not surprising given the clear statutory language that would belie any such interpretation. Roberson's declaration was simply not sufficient to bring Allstate's request for relief within the mandatory relief provision of the statute. Therefore, Allstate was unquestionably required to use diligence and to provide a

[11]The discussion in *Rogalski* of the mandatory attorney fault provision is part of an extended discussion distinguishing the earlier case of *Don* v. *Cruz* (1982) 131 Cal.App.3d 695 [182 Cal.Rptr. 581] (*Don*). In considering a request for relief from default by an insured, the *Don* court had analogized the relationship between "the insured and its carrier to the relationship between a litigant and his or her attorney, noting the general rule is that an attorney's inexcusable negligence is usually charged to the client and the client is relegated to a malpractice action against the attorney." (*Rogalski*, *supra*, 11 Cal.App.4th at p. 820.) The *Rogalski* court reasoned that the analogy was faulty and did not support denying relief from default in that case. because (1) the Legislature had subsequently amended section 473 to add the mandatory attorney-fault provision, and (2) the *Don* analysis failed to take into account that courts have "long afforded relief to litigants whose attorney's neglect amounts to 'positive misconduct' toward the client." (11 Cal.App.4th at p. 821.) Nothing in the *Rogalski* court's reasoning supports Allstate's leap of logic that relief must be granted to an *insurer* based upon an *insurer's* affidavit of its own fault.

sufficient justification for any delay in filing a motion under section 473 which, as discussed, it failed to do.

## IV. DISPOSITION

The trial court's order granting Allstate's motions to intervene and to set aside the default judgment against Mach is reversed. The cause is remanded to the trial court for further proceedings consistent with this decision.

Kline, P. J., and Lambden, J., concurred.

A petition for a rehearing was denied July 8, 1998, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied September 2, 1998.