Filed 4/29/15  Gregory v. Saldana CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| KEN GREGORY, | C073988 |
| Plaintiff and Appellant, | (Super. Ct. No. CVCV112597) |
| v. | |
| RAFAEL SALDANA, | |
| Defendant and Respondent. | |

In California, service of process on an individual defendant may be made by substitute service on "a person apparently in charge of [the defendant's] office, place of business, or usual mailing address."  (Code Civ. Proc.,[1] § 415.20, subd. (b).)  Here, when plaintiff Ken Gregory (Gregory) sued defendant Rafael Saldana (Saldana) for breach of oral contract, the process server left the summons and complaint at a location the trial

---

[1]      All further statutory references are to the Code of Civil Procedure.

court found was "a valid business address for defendant Saldana," but not with a "person [who was] apparently in charge." (§ 415.20, subd. (b).) After finding the substitute service invalid, the trial court set aside a default and default judgment that previously had been entered at Gregory's request.

On appeal, Gregory challenges the trial court's order setting aside the default and default judgment. We affirm, holding: (1) there was substantial evidence the substitute service of the summons and complaint was invalid and there was no actual notice to Saldana; (2) the standard of review for setting aside a default judgment is abuse of discretion; and (3) the trial court acted within its discretion in granting Saldana's motion to set aside the default and default judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Saldana is in a sole proprietorship doing business as Saldana Bros. Trucking, in the business of trucking hay. The "[p]hysical [b]usiness [a]ddress" of Saldana Bros. Trucking as listed on its fictitious business name statement is 12996 County Road 102 in Woodland. The "[b]usiness [m]ailing [a]ddress" is listed as post office box 584 also in Woodland.

Saldana grew up in Mexico, where he went to school until age 12. Thereafter, he did not attend school either in Mexico or California. Saldana "do[es] not read English," so he "rel[ies] on friends to explain to [him] what documents mean if documents are presented to [him]."

Working with Saldana is his brother, Manuel Saldana, who is an employee of Saldana in Saldana Bros. Trucking. Saldana's brother and his brother's son, Fredi Saldana (Fredi), have lived at 34209 County Road 23A since 2010. Saldana has not lived there during this time. According to Fredi, "[t]he U.S. Postal Service and other carriers . . . sometimes deliver documents and/or packages to 34209 County Road 23A. If the mail or package is not addressed to [Fredi], [he] usually ignore[s] it." Saldana "does not come into [34209 County Road 23A] without invitation and does not receive

2

mail there on a regular or any other basis." Saldana "does not read English and therefore [Fredi] feel[s] it is a waste of [Fredi's] time to give [Saldana] mail because [Saldana] cannot understand it anyway."

Also working with Saldana is his daughter, Linda Saldana, who does the paperwork for Saldana Bros. Trucking. Saldana's daughter sent invoices to Gregory in January 2010 and August 2010 listing the address of Saldana Bros. Trucking as "34209 Hwy 23A" in Woodland.

In November 2011, Gregory sued Saldana for breach of an oral contract that was allegedly entered into in April 2010 regarding Saldana purchasing alfalfa grown by Gregory.

On December 14, 2011, Gregory's attorney mailed to Saldana at "34209 Highway 23A" copies of the summons, complaint, civil case cover sheet, and notice of case management conference, along with a notice and acknowledgement of receipt form. According to a declaration filed by Gregory's attorney, the next day (December 15), Saldana called him, said he had received the documents, and wanted to know what they were. Gregory's attorney then explained the documents to him.

Saldana never returned the notice and acknowledgement of receipt form.

On January 31, 2012, a process server went to 34209 County Road 23A and left with Fredi a copy of the summons and complaint. The proof of service listed "Freddie" as a "[c]o-[r]esident of [Saldana] and [m]anager of S[aldana] B[ros]." The process servicer later mailed copies of the documents to the same address. According to a declaration filed by Fredi, he "never told anybody that [he] was a 'co-resident' with [Saldana]." He "never told anybody that [he] was a [m]anager of S[aldana] B[ros]. and [he] ha[s] never been a [m]anager of S[aldana] B[ros]." He "ha[s] never been employed by [Saldana] or S[aldana] B[ros]. and ha[s] no relationship with [Saldana] other than being his nephew . . . ."

3

In March 2012, Gregory filed a request for entry of default, which the court entered on March 16, 2012. The request for entry of default was mailed to "34209 County Road 23A" on July 11, 2012.

In August 2012, a default judgment totaling $ 92,098.34 was filed. The judgment left blank whom the judgment was against.

In September 2012, Saldana was personally served with an application and order to appear for a debtor's examination on September 20, 2012.

On November 16, 2012, an amended default judgment was filed naming Saldana as the defendant whom the judgment was against.

On December 14, 2012, a deputy sheriff personally served Saldana with a bench warrant that listed the case of "Gregory" "vs." "Saldana" with a bail amount of $93,974.44. Saldana signed the bench warrant, promising to appear in court at a debtor's examination on January 31, 2013. According to a declaration filed by Saldana, he "did not know any time before December 14, 2012 that [he] had been sued by [Gregory]." December 14, 2012, when he met with the deputy sheriff and was given a bench warrant (for failing to appear at an order of examination), was "the first notice [he] had of the . . . lawsuit."

After Saldana received notice of the lawsuit and bench warrant on December 14, 2012, it took Saldana "a couple of weeks to have a friend read and explain to [him] what it was."

On January 31, 2013, Saldana appeared at the debtor's examination.

On February 15, 2013, Saldana filed in pro. per. a motion to set aside the default and default judgment because he did not have notice of the lawsuit. In it, he asked for "time to find [l]egal [c]ounsel and . . . answer the . . . complaint to supply all information."

On February 21, 2013, Saldana appeared at a continuation of the debtor's examination.

4

On March 11, 2013, Saldana found a lawyer to represent him.

On March 13, 2013, Saldana's lawyer filed a motion to set aside the default and default judgment.

On April 24, 2013, the trial court granted the motion to set aside the default and default judgment "pursuant to C.C.P. §473.5." The summons and complaint were left at 34209 County Road 23A, which was "a valid business address for defendant Saldana, but . . . the substitute service of the summons and complaint at that address was not proper and valid service." The motion was "timely made because it was filed within two years after entry of the default judgment." As a "condition to setting aside of the default and default judgment," Saldana has to pay "$2,000 to plaintiff G[regory] because defendant S[aldana] was not diligent in moving to set aside the default and default judgment."

Gregory filed a timely notice of appeal from the trial court's order granting relief from default and default judgment.

## DISCUSSION

On appeal, Gregory contends that the substitute service was valid, Saldana received actual notice, and, applying a de novo standard of review, the trial court erred in ruling that Saldana's motion to set aside the default and default judgment was timely.

As we will discuss below, we hold: (1) there was substantial evidence the substitute service of the summons and complaint was invalid and there was no actual notice to Saldana; (2) the standard of review for setting aside a default judgment is abuse of discretion; and (3) the trial court acted within its discretion in granting Saldana's motion to set aside the default and default judgment.

5

## I

*There Was Substantial Evidence To Support The Trial Court's*

*Findings That Substitute Service Of The Summons And Complaint*

*Were Invalid And There Was No Actual Notice To Saldana*

To reach the issue of whether the trial court erred in granting Saldana's motion to set aside the default and default judgment under section 473.5, we must first address the threshold issue raised by Gregory of whether the substitute service of the summons and complaint was valid. Only if the substitute service was invalid did the trial court have the discretion to set aside the default and default judgment. (§ 473.5, subds. (a), (c).) The trial court found the service invalid. We review this factual finding for substantial evidence. (*Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1182.)

Substitute service on an individual may be made "by leaving a copy of the summons and complaint at the person's . . . usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of . . . a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing." (§ 415.20, subd. (b).)

Gregory claims that Saldana was properly served by substitute service under section 415.20, subdivision (a). But subdivision (a) is inapplicable here. Saldana operates his business as a sole proprietorship. Subdivision (a) applies to substitute service on corporations (§§ 416.10, 416.20), joint stock companies or associations (§ 416.30), unincorporated associations (§ 416.40) and public entities (§ 416.50). (§

6

415.20, subd. (a).) " 'A sole proprietorship is *not* a legal entity itself. Rather, the term refers to a natural person who *directly* owns the business . . . .' " (*Providence Washington Ins. Co. v. Valley Forge Ins. Co.* (1996) 42 Cal.App.4th 1194, 1199.) Thus, service on a sole proprietorship is completed in the same manner as service on an individual, and we turn next to determining whether there was substantial evidence of lack of service on Saldana.

A

*There Was Substantial Evidence Of Lack Of "Substantial Compliance" With The Substitute Service Statute*

While it is " 'well settled that strict compliance with statutes governing service of process is not required,' " there must still be "[s]ubstantial [c]ompliance." (*Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 410.) "[A] finding of substantial compliance requires three preconditions." (*Carol Gilbert, Inc. v. Haller* (2009) 179 Cal.App.4th 852, 865.) One, "there must have been *some* degree of *compliance* with the offended statutory requirements." (*Id.* at p. 866.) Two, "the objective nature and circumstances of the attempted service must have made it ' " 'highly probable' " ' that it would impart the same notice as full compliance." (*Ibid.*) And three, "it must in fact have imparted such notice, or at least sufficient notice to put the defendant on his defense. In this regard, it is not enough that the process inform the defendant of the fact of a lawsuit, or even of a lawsuit in which his name appears. Due process requires notice of 'the duty to defend.' " (*Ibid.*)

Applying these three factors here, there was substantial evidence to support the trial court's finding "the substitute service of the summons and complaint at [34209 County Road 23A] was not proper and valid service."

One, there was substantial evidence of the lack of requisite degree of compliance because Fredi was not "*a person apparently in charge* of [Saldana's] office, place of business, or usual mailing address . . . ." (§ 415.20, subd. (b), italics added.) According

7

to Fredi's declaration (which the trial court necessarily credited because of its factual finding that substitute service was invalid), he "never told anybody that [he] was a 'co-resident' with [Saldana]." He "never told anybody that [he] was a [m]anager of S[aldana] B[ros.] and [he] ha[s] never been a [m]anager of S[aldana] B[ros]." He "ha[s] never been employed by [Saldana] or S[aldana] B[ros]. and ha[s] no relationship with [Saldana] other than being his nephew . . . ."

While Gregory points to the "declaration of diligence" from the process server that states to the contrary, the trial court made its own determination of witness credibility. The trial court's determination of controverted facts and implied findings are conclusive and will not be disturbed on appeal. (*Stafford v. Mach*, *supra*, 64 Cal.App.4th at p. 1182.)

Two, there was substantial evidence that the objective nature and circumstances of the service on Fredi did not make it highly probable that it would impart the same notice as full compliance. (*Carol Gilbert, Inc. v. Haller*, *supra*, 179 Cal.App.4th at p. 866.) On January 31, 2012, a process server went to 34209 County Road 23A and left with Fredi a copy of the summons and complaint. According to Fredi's declaration (which, as we have explained, the court credited), Saldana "d[oes] not come into [34209 County Road 23A] without invitation and does not receive mail there on a regular or any other basis." And (which we have earlier recounted), Fredi "never told anybody that [he] was a 'co-resident' with [Saldana]," he "never told anybody that [he] was a [m]anager of S[aldana] B[ros.] and [he] ha[s] never been a [m]anager of S[aldana] B[ros]." He "ha[s] never been employed by [Saldana] or S[aldana] B[ros]. and ha[s] no relationship with [Saldana] other than being his nephew . . . ." Thus, there was no objective evidence that notice to Fredi would result in notice to Saldana.

And three, there was substantial evidence the service here did not give Saldana notice of any kind, let alone of his duty to defend. (*Carol Gilbert, Inc. v. Haller*, *supra*, 179 Cal.App.4th at p. 866.) Fredi "usually ignore[s]" mail or packages "not addressed to

8

[him]."  And, in the event mail or packages are addressed to Saldana, Fredi "feel[s] it is a waste of [his own] time to give [Saldana] mail because [Saldana] cannot understand it anyway," because Saldana "does not read English."

B

*Gregory's Contentions Regarding Saldana's Purported*

*Actual Notice Contravene The Standard Of Appellate Review*

Gregory contends that Saldana had actual notice of the lawsuit because Saldana received a letter sent by Gregory's trial counsel with copies of the summons, complaint, and acknowledgement of service.  According to Saldana, however, he "did not know any time before December 14, 2012 that [he] had been sued by [Gregory]."  He was unable to read the letter sent by Gregory's trial counsel with the copies because he "do[es] not read English."  He learned of the lawsuit only when he "received the [b]ench [w]arrant from the deputy."

Gregory discounts this evidence, stating it is supported only by Saldana's "unsubstantiated assertion," and there was evidence Saldana "lacked[d] any credibility."

Gregory's attack of a witness's credibility is misplaced, as it ignores the deference that we as an appellate court must give to a trial court's explicit and implicit factual findings (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479) and "presumptions [we] indulge[] in favor of [the] correctness" of a trial court's judgment or order (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133).  "Even though contrary findings *could* have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict.  This is true whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin*, at p. 479.)  Here, the declaration of Saldana conflicted with that of Gregory's attorney on when Saldana had actual notice of the lawsuit.  The trial court impliedly credited Saldana's declaration, and we must defer to that factual finding on appeal.

9

## II

### *The Standard Of Review Of The Trial Court's Order*
### *Setting Aside A Default And Default Judgment Is Abuse Of Discretion*

Gregory next contends the standard that governs our review of the trial court's order setting aside the default judgment is a de novo review. His contention does not acknowledge the difference between setting aside defaults and default judgments involving facial deficiencies in judgments or orders pursuant to section 473, subdivision (d) and setting aside defaults and default judgments on affidavits under section 473.5, as happened here.

Section 473, subdivision (d) provides as follows: "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order." Where a motion is made under this subdivision based on a factual defect, the motion can be set aside only if the facial defect is " 'is apparent upon an inspection of the judgment-roll.' " (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441.)

In contrast, motions to set aside default judgments under section 473.5 go beyond the judgment roll. A motion under section 473.5, subdivision (b) "shall be accompanied by an affidavit showing under oath that the party's lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect." "Upon a finding by the court that the motion was made within the period permitted . . . and that his or her lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect, it may set aside the default or default judgment on whatever terms as may be just and allow the party to defend the action." (§ 473.5, subd. (c).)

Here, the trial court granted Saldana's motion to set aside the default and default judgment "pursuant to C.C.P. §473.5." "[W]here a plaintiff has contested a motion to

10

vacate a default judgment by way of affidavits or other evidence that goes beyond the judgment roll . . . of necessity our review goes beyond the judgment roll. [Citation.] In determining any issues raised by such evidentiary matters, our review is governed by the familiar abuse of discretion standard. [Citation.] That standard requires we defer to factual determinations made by the trial court when the evidence is in conflict, whether the evidence consists of oral testimony or declarations." (*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1440-1441.)

III

*The Trial Court Was Within Its Discretion To Grant Saldana's Motion*

*To Set Aside The Default And Default Judgment Under Section 473.5*

Gregory makes two arguments in support of his contention the trial court erred in setting aside the default. First, he claims Saldana had actual notice of the lawsuit. We have already reviewed and rejected this argument in part IB of the Discussion above. Second, he claims that Saldana's motion was not filed within a reasonable time after his default was entered. As we explain below, the trial court was within its discretion to conclude otherwise.

"The notice of motion shall be served and filed within a reasonable time, but in no event exceeding the earlier of: (i) two years after entry of a default judgment against him or her; or (ii) 180 days after service on him or her of a written notice that the default or default judgment has been entered." (§ 473.5, subd. (a).) The time for filing a motion under section 473.5 "expressly commence[s] upon entry of the judgment rather than upon entry of the default." (*Rogers v. Silverman* (1989) 216 Cal.App.3d 1114, 1126.)

Here, the trial court's implied finding that the motion was filed and served within a reasonable time was supported by the evidence and thus within the trial court's discretion. Saldana "did not know any time before December 14, 2012 that [he] had been sued by [Gregory]." On December 14, 2012, when he met with the deputy sheriff and was given a bench warrant (for failing to appear at an order of examination), was "the

11

first notice [he] had of the . . . lawsuit." On February 15, 2013, which was two months after his first notice, he filed in pro. per. his motion to set aside the default. On March 13, 2013, which was three months after this first notice, his retained counsel filed a motion to set aside the default and default judgment.

To the extent Gregory argues that a three-month delay "absent satisfactory explanation for the delay" was a reason to deny Saldana relief from default, it was well within the court's discretion to allow relief from default, because Saldana accounted for this delay. After receiving the first notice of the lawsuit and bench warrant on December 14, 2012, when he met with the deputy sheriff, it took Saldana "a couple of weeks to have a friend read and explain to [him] what it was." Saldana "do[es] not read English," so he "rel[ies] on friends to explain to [him] what documents mean if documents are presented to [him]." About two weeks after having the documents explained to him, Saldana filed in pro. per. his motion to set aside the default and default judgment on February 15, 2013. In his motion, he explained that he needed time to find an attorney to represent him. In the interim, Saldana appeared at a debtor's examination on January 31, 2013, and a continuation of that examination on February 21, 2013.**2** Less than one month after filing his pro. per. motion to set aside the default, Saldana found a lawyer to represent him on March 11, 2013. Within two days of finding a lawyer,

---

**2** Gregory claims that Saldana's personal appearances at the debtor's examinations "waiv[ed] any alleged defect in connection with the service of summons, complaint and/or default judgment documents making a general appearance in the action." Gregory does not explain how these involuntary appearances at debtor's examinations are the same as general appearances in the underlying action. Section 1014 defines what constitutes a defendant's "appear[ance] in an action" and explains it is "when the defendant answers, demurs, files a notice of motion to strike, files a notice of motion to transfer . . . , moves for reclassification . . . , gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant." This definition does not include the involuntary appearances at debtor's examinations that Saldana made here.

Saldana, through his lawyer, filed the instant motion to set aside the default judgment on March 13, 2013. These explanations for Saldana's three-month delay support the trial court's implied finding of reasonableness.

Finally, we note this implied finding was consistent with the trial court's order requiring Saldana to pay $2,000 to Gregory because, as the trial court put it, Saldana was not "diligent" in moving to set aside the default and default judgment. The trial court had the discretion to impose this "term" (the payment of $2,000) because there was evidence it was "just" under the circumstances. (§ 473.5, subd. (c) ["Upon a finding by the court that the motion was made within the period permitted . . . and that his or her lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect, it may set aside the default or default judgment on whatever terms as may be just and allow the party to defend the action"].) Gregory's counsel attached a declaration in opposition of the motion to set aside the default judgment. In it, Gregory's counsel declared that because of Saldana's "delay" in retaining an attorney and moving to set aside the default judgment, Gregory had to incur additional attorney fees and was unable to timely pay off a crop loan, causing Gregory to have to sell some farm equipment. The trial court reasonably could have credited the evidence that Saldana did not have actual notice of the lawsuit until December 14, 2012, given his inability to read English, which caused him greater delay in taking action to defend himself against the lawsuit, but that the three-month delay still showed a lack of diligence, requiring monetary compensation to Gregory for expenses he incurred because of that delay.

## DISPOSITION

The judgment (order setting aside the default and default judgment) is affirmed. Saldana is entitled to his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)&(2).)


                                               _____ROBIE_____, Acting P. J.


We concur:


_____MURRAY_____, J.


_____HOCH_____, J.