232 Cal.App.3d 1286 (1991)
284 Cal. Rptr. 38
In re ANDREW V., a Minor.
SAN BERNARDINO COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Petitioner and Respondent,
v.
DAVID O., Objector and Appellant.
Docket No. E008285.
Court of Appeals of California, Fourth District, Division Two.
July 30, 1991.
*1288 COUNSEL
David F. Blaisdell, under appointment by the Court of Appeal, for Objector and Appellant.
Alan K. Marks, County Counsel, and Joanne Fenton, Deputy County Counsel, for Petitioner and Respondent.
William Bud Walls II, under appointment by the Court of Appeal, for Minor.
[Opinion certified for partial publication.[*]]
OPINION
TIMLIN, J.
David O. (father) has appealed from an order terminating his parental rights as to Andrew V. (minor), following a trial of the consolidated matters of father's action to establish paternity and the department of public social services' (DPSS) subsequent petition to terminate father's parental rights.

FACTS
Father and the minor's mother lived together. When the minor's mother told father she was pregnant with the minor, father left to live with his family *1289 in Missouri. Mother contacted DPSS about a month before she gave birth to arrange to have the minor adopted. The child was born on April 22, 1989, and placed in a foster home specially licensed to care for drug-exposed infants after medical reports indicated the minor had been exposed to drugs while in utero.
The DPSS social worker assigned to the case spoke with father about four days after minor's birth, telling him of the mother's plan to have the minor adopted and warning him that he would need to seek a judicial determination of his paternity of minor if he did not want the minor to be adopted. On May 9, father was served with a notice pursuant to Civil Code section 7017, subdivision (b)[1] advising him that he is or could be the minor's natural father and that the minor was to be adopted or placed for adoption.
On June 13, mother formally relinquished the minor for adoption. On June 22, father commenced an action under section 7006, subdivision (c) to establish his paternity of minor and sought an order to show cause re child custody and visitation. On July 13, DPSS filed a petition to terminate father's parental rights under section 7017, subdivision (b). Father's paternity proceeding was consolidated with the section 7017 termination proceeding pursuant to section 7006, subdivision (c). DPSS's petition alleged in part that father was the natural father of minor but not a presumed father under section 7004.
After a number of continuances, the matter was finally heard nine months after the section 7017, subdivision (b) petition was filed. The trial court found father to be the natural parent of minor and ordered father's parental rights terminated. Father then filed a timely notice of appeal from the judgment of termination.
On appeal, father contends that there is no substantial evidence to support the trial court's finding that it was in the best interest of the minor to terminate father's parental rights. Father also contends that the excessive continuances granted in this case resulted in prejudice to him, and is a sufficient basis upon which we may reverse the judgment.
DPSS contends that the trial court lacked jurisdiction to consider father's paternity action, because he failed to initiate his action to establish paternity in a timely manner. It also contends that there is substantial evidence to support the trial court's findings and decision on the DPSS petition, and that father was not prejudiced by the continuances.

*1290 DISCUSSION

1. The Trial Court Did Not Lack Jurisdiction to Consider Father's Petition to Establish Paternity

Section 7017, subdivision (b) provides, in relevant part, that if a mother relinquishes a child for adoption, the agency to whom the child has been relinquished must file a petition to terminate the parental rights of the child's alleged father "unless the father has been served as prescribed in subdivision (f) with a written notice alleging that he is or could be the natural father of the child ... and [he] has failed to bring an action for the purpose of declaring the existence of the father and child relationship ... within 30 days of service of the notice or the birth of the child, whichever is later." (§ 7017, subd. (b), italics added.)
DPSS takes the position, because father began his action to establish paternity 42 days after receiving written notice that he could be the minor's natural father, that the trial court lost "jurisdiction" to determine whether father was minor's natural parent, and, implicitly, that his appeal from the termination judgment is therefore moot. In other words, DPSS views the 30-day period to be in the nature of a statute of limitations for commencement of action under section 7006, subdivision (c). It has not proffered any authority, statutory or judicial, for such a proposition, but relies on (1) the general public policy of resolving children's adoption issues early and with finality and (2) the opinion in Lehr v. Robertson (1983) 463 U.S. 248 [77 L.Ed.2d 614, 103 S.Ct. 2985].
In Lehr, the United States Supreme Court upheld a New York statutory scheme which required a putative father to register with the state's putative father registry in order to protect his right to notice of any proceeding to adopt his child born out of wedlock. It held that the legitimate state interests in facilitating the adoption of young children and having the adoption proceedings completed expeditiously "also justify a trial judge's determination to require all interested parties to adhere precisely to the procedural requirements of the statute. The Constitution does not require either a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own rights. Since the New York statutes adequately protected [father's] inchoate interest in establishing a relationship with Jessica, we find no merit in the claim that his constitutional rights were offended because the Family Court strictly complied with the notice provisions of the statute." (463 U.S. at p. 265 [77 L.Ed.2d at p. 629, 103 S.Ct. at p. 2995].)
*1291 As should be apparent from the above quote, the holding in Lehr is simply and totally inapplicable here. Lehr involved a case in which the putative father did not receive notice because he did not register. The issue in Lehr was the adequacy of New York's statutory notice requirements. It did not involve whether a particular time period after statutory notice to a person he could be the natural father constituted a limitation of the father's right to initiate an action to establish paternity.
(1a) Here, DPSS incorrectly assumes that section 7017 imposes a 30-day time period within which a natural father must respond after receipt of written notice and, therefore, it is a statute of limitation, the passing of which deprives the trial court of jurisdiction. However, section 7006, subdivision (c), under which the father's paternity action was initiated, provides no time period within which the alleged father must begin a paternity action. The 30-day period in section 7017, subdivision (b) provides that if the alleged father does not begin such action within 30 days of notice, DPSS need not file a petition under subdivision (b) but may proceed to terminate parental rights without the necessity of a hearing on whether the alleged natural father of the minor is such and therefore entitled to a court declaration of the existence of a father-child relationship with the minor. In other words, if an alleged natural father does not bring a section 7006, subdivision (c) action within 30 days of service of notice, he has failed to appear in response to the notice of proceedings under subdivision (f) of section 7017, and his parental rights with reference to the minor will be terminated by the court under the authority of section 7017, subdivision (d), subpart (1).
(2) Another problem with DPSS's position is that a court's jurisdiction is not affected by the running of a statute of limitations, assuming one existed in this case. The statute of limitations in a civil action is generally held to be a defense which may be waived by failure to plead it, and which a party may be estopped to invoke under some circumstances. (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 77, pp. 446-447.) (1b) Thus, even if we were to conclude that the 30-day period was a statute of limitations, both the natural mother and DPSS apparently waived it because they did not file a response to father's action to establish paternity or in any manner allege as an affirmative defense a purported statute of limitations.
Finally, we conclude that the statutory scheme of section 7017 and the provisions of section 7017.2 are sufficient to fulfill the public policy of speedy resolution of adoption issues without the necessity of a tortured legislative interpretation by us to judicially create a statute of limitations that would limit the due process right of an alleged natural father to assert such parenthood and have it judicially declared.
*1292 For the foregoing reasons, the trial court had jurisdiction over both father's action and DPSS's petition.

2. There Is Substantial Evidence to Support the Trial Court's Findings

a. The Standard Used by the Trial Court

Father contends that as a natural father, he was entitled to have the trial court first consider whether an award of custody to him would be detrimental to the child ("detriment test") before it considered the child's best interests, and cites In re Baby Girl M. (1984) 37 Cal.3d 65 [207 Cal. Rptr. 309, 688 P.2d 918].
(3) Father, however, ignores the 1986 legislative amendments to subdivision (d) of section 7017, which specifically provide that the best interest of the child standard shall be applied by the court in a section 7017 proceeding. The amendment also specifically states that section 4600, upon which the majority in In re Baby Girl M. relied in holding that the detriment test must be first applied by the court, does not apply to section 7017 proceedings.
We conclude that these amendments clearly negate the holding in In re Baby Girl M. that a detriment test must be applied.
Father does, however, acknowledge that the trial court specifically and expressly found not only that there was clear and convincing evidence that it was in the minor's best interest that father's parental rights and responsibilities be terminated, but that "even if a detriment standard were required in addition to a best interest test, the court would find by clear and convincing evidence that it would be detrimental to award custody to the father." His real assertion on appeal is that there is no clear and convincing substantial evidence that it was in the best interest of the minor that father's parental rights be terminated.

b., 3.[*]
.... .... .... .... .... .... .... .

*1293 DISPOSITION
The judgment is affirmed.
Ramirez, P.J., and Hollenhorst, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of sections 2b and 3.
[1] All further statutory citations will be to the Civil Code unless otherwise specifically stated.
[*] See footnote, ante, page 1286.