[No. A088653. First Dist., Div. Four. Oct. 20, 2000.]

Adoption of AARON H., a Minor.
CASSANDRA L. et al., Plaintiffs and Respondents, v.
RICHARD M., Defendant and Appellant

[No. A088656. First Dist., Div. Four. Oct. 20, 2000.]

Adoption of AARON H., a Minor.
RICHARD M., Plaintiff and Appellant, v.
ALEXIS H. et al., Defendants and Respondents.

**COUNSEL**

Terrence W. Andrews for Plaintiff and Appellant and for Defendant and Appellant.

No appearance for Plaintiffs and Respondents.

Jane A. Gorman for Defendants and Respondents.

**OPINION**

**HANLON, P. J.—**

### FACTS

Aaron H. was born in September 1998. His teenage mother, Alexis H., soon determined that she was unable to care for Aaron and put him up for adoption. Alexis's aunt and uncle, Cassandra L. and Jon L., decided to adopt Aaron. Alexis was in favor of the adoption.

The adoption petition was filed on December 18, 1998. Richard M. was named in the petition as Aaron's father. The attorney for Cassandra and Jon sent Richard a letter advising him: "You could be the natural father of Aaron [H.], born September . . . 1998, who has been placed for adoption. The child's mother is Alexis [H.] If you wish to establish that you are the father, the action must be brought within 30 days of the service of this notice or the birth of the child, whichever is later. The action must be brought in the Superior Court, County of Contra Costa, located at 725 Court Street, Martinez, California, 94553." This notice was served on Richard on December 24, 1998. The following events occurred in 1999:

After more than 30 days had passed with no action by Richard, Cassandra and Jon filed another petition. This one, ex parte, as authorized by Family Code section 7662, asked the court to "find and declare that the alleged natural father of the Minor is identified as Richard [M.]; and that further notice to and the consent of Alleged Natural Father is not necessary for the adoption of this Minor; and that Alleged Natural Father has no parental rights with regard to said Minor." This second petition was apparently submitted to the court in late January but it was not filed until February 8. That same day the court filed an order with the findings requested.

Meanwhile, on February 1, Richard filed a "Complaint to Establish Parental Relationship." On the 25th of that month he moved for orders (1) consolidating his complaint (case No. D99-00479) with the adoption proceeding (case No. A98-00440), (2) setting aside the order of February 8, and (3) directing blood tests to determine if Aaron was his son. Richard explained his delay in acting: "When I received the Notice of Alleged Paternity [from the attorney for Cassandra and Jon] . . . , I was under the opinion that they had made an error since Alexis . . . had been informing everyone that her then boyfriend was the father of her child." It was not until he received a second notice, this one "from the Oakland Adoptions District Office, dated January 25, 1999, . . . [that] I then realized that I may in fact be the true father of the baby born to Alexis . . . , and if this was true I wanted to raise this baby as my own." Alexis filed opposition to any form of relief requested by Richard. She also filed her own "Petition to Determine Parental Rights of Alleged Natural Father."

The parties voluntarily agreed to blood tests, which showed that Richard was Aaron's father. On June 14 the court denied the request to consolidate the two actions (but ordered them "coordinated") and set a hearing date for Richard's request to vacate the February 8 order.

At the conclusion of that hearing the trial court made an order that warrants being quoted at length:

"1) The Motion to Set Aside the Order Terminating Parental Rights is DENIED.

"2) . . . .

"3) The father was personally served with a Notice of Alleged Paternity and accompanying letter from the adoptive parents' attorney on December 24, 1998, and these documents provided him with adequate notice to satisfy his due process and equal protection rights.

"4) The father failed to bring a paternity action within the 30 days following receiving this notice, and failed to act diligently, within the meaning of Adoption of Kelsey S. (1992) 1 Cal.4th 816 [4 Cal.Rptr.2d 615, 823 P.2d 1216] and Adoption of Michael H. (1995) 10 Cal.4th 1043 [43 Cal.Rptr.2d 445, 898 P.2d 891, 61 A.L.R.5th 769] to pursue his parental rights in any other manner whatsoever within the same 30 day period.

"5) The father's motion to vacate this order was also considered as if it had been brought under Code of Civil Procedure section 473, but no mistake, inadvertence, surprise or excusable neglect was shown.

"6) No change of circumstance was shown between January 24, the end of the 30 day period following the father's being served with Notice of Alleged Paternity, and January 27, 1999, the date on which he signed his paternity action sufficient to establish that he had obtained some information during that time period not available to him prior to January 24, 1999."

In light of its decision not to set aside the February 8 order terminating Richard's parental rights, the court dismissed the opposing complaint and petition to establish his parental relationship and rights. Apparently because there were two trial court case numbers involved, Richard filed separate notices of appeal from the order.

## DISCUSSION

■ Family Code section 7662 provides that if a mother relinquishes a child for adoption or consents to adoption, the "person to whom the child has been or is to be relinquished . . . shall file a petition to terminate the parental rights of the father unless . . . : [¶] . . . [¶] (b) The father has been served . . . with a written notice alleging that he is or could be the natural father of the child to be adopted . . . and has failed to bring an action for the purpose of declaring the existence of the father and child relationship . . . within 30 days of service of the notice or the birth of the child, whichever is

later." The Fourth Appellate District in *In re Andrew V.* (1991) 232 Cal.App.3d 1286, 1290-1291 [284 Cal.Rptr. 38] considered the 30-day period specified in a predecessor version of this statute, and held that it was not a statute of limitations and did not divest a court of jurisdiction to rule on a father's action to establish paternity that was filed 42 days after he received the written notice. Based on this decision, Richard argues that the sole issue on his appeal is whether his complaint is time-barred because it was filed 39 days after the notice from the attorney representing Cassandra and Jon L. was served. This argument is predicated on the belief that the trial court's order contravened *Andrew V.* The trial court distinguished *Andrew V.* but there is no need for us to explore the validity of either *Andrew V.* or the trial court's reasoning. The true nature of the trial court's order rests on another basis.

The 30-day period of Family Code section 7662 does not figure at all in the trial court's order. The heart of that order is the decision to deny Richard's motion to set aside the February 8 order terminating Richard's parental rights. As shown by the language of the order quoted above, that ruling is at root a determination that Richard had not acted in a timely manner to set aside the February 8 order. There being no counterpart in the Family Code, we agree with the trial court's approaching this issue by analyzing Richard's motion to set aside the February order according to the criteria of Code of Civil Procedure section 473, subdivision (b).

Code of Civil Procedure section 473, subdivision (b) imposes on the party seeking relief the obligation to show that he or she did so with reasonable diligence; this is a matter committed to the trial court's discretion that will be reversed only for abuse. (E.g., *Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1180-1181 [75 Cal.Rptr.2d 809]; *Kendall v. Barker* (1988) 197 Cal.App.3d 619, 623-625 [243 Cal.Rptr. 42].) These are the reasons given by the trial court in making its decision:

"I'm looking at whether there is any reason to set aside the order on any other legal grounds, and I guess this would be along the lines of [Code of Civil Procedure section] 473[, subdivision (b)] mistake, inadvertence, surprise, or excuse, even neglect.

"Even in looking at that standard, I cannot find that there was . . . such a showing. The reason advanced by Mr. M[.] was that he was confused because he was not sure it was his baby.

"And he went on to state in his direct testimony that had he known for sure it was his baby, he would have taken action earlier.

"But he . . . went on to state in his testimony that he was aware that to stop the adoption he had to bring the action within 30 days, and . . . he and his family talked about stopping the adoption shortly after December 24, 1998.

"So there's clearly no mistake on his part. Frankly, I don't find his testimony credible when he says he didn't think the baby was his, and that that was the reason for the delay.

"Because, in fact, nothing changed between that and his declaration on January 27th of 1999, that the baby was his, or his discussions with his family about taking steps to establish paternity.

"We then reach counsel's argument that the Department of Social Services letter was more, I think his words were threatening or advisory.

"I compared the two letters to find if the original notice and letter dated December 24, 1998 was inadequate notice, in which case I would have found a due process violation.

"But it does appear to be clear. It states that failure to respond within 30 days may result in the termination of the parental rights.

"It was clear Mr. M[.] understood that. There's no real difference between the two letters. Mr. M[.] was well aware of what the consequences were of failing to respond within 30 days.

"It's interesting in this case, because what happened was 34 days elapsed from the time of the notice to the time he signed the complaint, and a few more days until it was filed.

"And yet the number of days is not the telling factor. To me the telling issue is whether any action was taken within that 30 days, whether Mr. M[.] knew that action had to be taken within that 30 days.

"He did. He didn't do it timely. There is no justifiable reason . . . for his not acting in a timely manner, and, therefore, I'm denying the motion to set aside the order."

Richard presents no argument concerning the legal or factual accuracy of the trial court's comments. To us, they and the rest of the record demonstrate that the trial court did not abuse its discretion in refusing to set aside the earlier order terminating parental rights.

## DISPOSITION

The order is affirmed.

Sepulveda, J., and Woolard, J.,* concurred.

---

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.