Filed 10/30/14  Adoption of J.T. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Adoption of J.T., a Minor. | |
| JIMMIE L. et al., <br><br>    Plaintiffs and Respondents, <br><br> v. <br><br> JUSTIN W., <br><br>    Defendant and Appellant. | A139671 <br><br> (San Francisco County <br> Super. Ct. No. FAD13022756) |

Justin W. appeals from an order terminating his parental rights to his biological son J.T. (the minor) after the minor's mother placed him with relatives for adoption and Justin failed to timely file an action to establish the existence of a parent-child relationship.  (Fam. Code, §§ 7662, 7667.)[1]  We reject his challenges to the procedure used to terminate his parental rights and the court's jurisdiction over him as the resident of another state.  We also conclude the court did not commit prejudicial error in determining the minor was not an Indian child for purposes of the Indian Child Welfare Act (ICWA; 25 U.S.C. 1901 et seq.).

---

[1]  Further statutory references are to the Family Code unless otherwise indicated.

1

# I.  UNIFORM PARENTAGE ACT

The Uniform Parentage Act (UPA; § 7600 et seq.) provides the statutory framework for making parentage determinations in California, which in turn determines the procedures and findings necessary when a child is placed for adoption.  (See *In re T.G.* (2013) 215 Cal.App.4th 1, 3 (*T.G.*).)  The parental rights of an alleged or biological father depend on whether he is presumed to be the natural parent of the child under section 7611.[2]  (See § 8604, subd. (a) [consent of mother and presumed father required for adoption]; *T.G.*, at p. 3; *Adoption of Arthur M.* (2007) 149 Cal.App.4th 704, 718.)  To be a presumed father, a man must fall within one of several categories enumerated in section 7611.  If he has neither legally married nor attempted to legally marry the child's natural mother (§ 7611, subds. (a)-(c)), he cannot become a presumed father unless he "receives the child into his home . . . and holds the child out as his . . . natural child." (§ 7611, subd. (d); *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 595.)  An action to determine the existence of a parent-child relationship, and presumed father status, may be brought under section 7630 by any man alleged to be or alleging himself to be the father.  (*V.S. v. M.L.* (2013) 222 Cal.App.4th 730, 734-735.)  This procedure affords due process and equal protection to an alleged or biological father.  (See *In re Tricia M.* (1977) 74 Cal.App.3d 125, 136.)

"Under California law, an unwed biological father has a right to withhold consent to adoption of a child only if he meets the definition of a 'presumed father.' " (*Adoption of A.S.* (2012) 212 Cal.App.4th 188, 202 (*A.S.*); § 8604, subd. (a).)  " 'If a man is the presumed father of a child, the child cannot be adopted without his consent [citation], unless the trial court finds, on statutorily specified grounds, that he is unfit.  [Citation.]

---

[2]  After the hearing at issue in this case, section 7611 and other sections of the UPA were amended to use the gender-neutral term "presumed parent" rather than "presumed father."  (Stats. 2013, ch. 510, § 3, effective January 1, 2014; see *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 117 [provisions of former version of UPA applicable to determining father-child relationship applicable to the extent possible when determining mother-child relationship].)  We use the term "father" rather than "parent" to reflect the specific facts of this case and the language of the statute at the time of the hearing from which the appeal was taken.

If, however, he is not a presumed father of a child, the child can be adopted without his consent, and his parental rights can be terminated, unless the court determines it is in the child's best interest for him to retain his parental rights. [Citation.]' " (*Adoption of H.R.* (2012) 205 Cal.App.4th 455, 465.)

When a mother consents to the adoption of a child who does not have a presumed father, the adoptive parent must generally file a petition to terminate the parental rights of an alleged or biological father, but need not do so when "[t]he alleged father has been served as prescribed in Section 7666 with a written notice alleging that he is or could be the biological father of the child to be adopted or placed for adoption and has failed to bring an action for the purpose of declaring the existence of the father and child relationship pursuant to subdivision (c) of Section 7630 within 30 days of service of the notice or the birth of the child, whichever is later." (§ 7662, subd. (a)(2).) The court shall issue an order dispensing with the need for notice of the proceedings and may issue an ex parte order terminating the parental rights of an alleged father who "has been served with written notice of his alleged paternity and the proposed adoption, and he has failed to bring an action pursuant to subdivision (c) of Section 7630 within 30 days of service of the notice or the birth of the child, whichever is later." (§§ 7666, subd. (b)(4); 7667, subd. (c)(3); see *Adoption of Aaron H.* (2000) 84 Cal.App.4th 786, 788 [alleged father's parental rights terminated where he failed to file parentage action within 30 days of receiving notice; father did not establish he was entitled to relief from default under Code Civ. Proc., § 473, subd. (b)]; *In re Andrew V.* (1991) 232 Cal.App.3d 1286, 1291 [court may terminate parental rights of natural father under former statute when he does not file paternity action within 30 days of receiving notice, although 30-day period is not jurisdictional and does not operate as statute of limitations].)

## II. FACTS AND PROCEDURAL HISTORY

K.T. (mother) met Justin in the autumn of 2012, when they were both teenagers living in Oklahoma. She became pregnant, and the minor was born prematurely in Oklahoma in May 2013. Although mother and Justin lived together for a couple of months while mother was pregnant, Justin moved out several months before she gave

3

birth and did not learn of the birth until after the fact. According to mother, Justin did not provide her with any financial support during the pregnancy or after the minor's birth. According to Justin, he purchased items necessary to care for the child.

Mother arranged to have the minor adopted by her uncle, Jimmie L., and his husband, Robert S., who lived in San Francisco. After the minor was born prematurely, Jimmie and Robert traveled to Oklahoma and remained there for several weeks while the minor was hospitalized. Upon the minor's release, Jimmie and Robert obtained an order under the Interstate Compact on the Placement of Children allowing them to return with him to their home in San Francisco. They initiated this action by filing an adoption request form in the superior court in San Francisco on May 6, 2013, and filed an amended request on June 7. Mother moved to San Francisco and has frequent contact with her uncles and the minor.

Mother signed a consent to the adoption shortly after the minor's birth. Jimmie and Robert prepared a notice of the pending adoption proceedings under section 7662 to be served on Justin as the biological or alleged father.[3] The maternal grandmother, Lorri T., personally served the papers on Justin in Oklahoma on June 11, 2013. The notice stated mother had made arrangements to place the child for adoption and advised him: "If you fail to bring an action for the purpose of declaring the existence of the father and child relationship pursuant to Section 7630 or 7631 and Section 7664(b) of the California Family Code within thirty (30) days of service of this Notice or the date of birth of the child, whichever is later, you will not be given further notice of the adoption proceeding and your parental rights, if any, will be terminated by the Court. If you desire to bring an action as set forth above, you should seek the advice of an attorney immediately." (§§ 7630, former 7631, 7664, subd. (b).)

Justin did not file an action to establish a parent-child relationship under section 7630 and on July 24, 2013, Jimmie and Robert filed an application to dispense

---

[3] Mother had also identified two other men as the possible biological father, but Justin's paternity was confirmed through DNA testing and the other men are not parties to this proceeding.

4

with further notice to him and to terminate his parental rights.  (§§ 7666, subd. (b)(4), 7667, subd. (c)(3).)  A hearing on this application was set for August 12, 2013.

Justin's father was an enrolled member of the Cherokee Nation, though Justin himself was not.  On June 18, 2013, the Cherokee Nation sent a letter indicating the minor was considered an Indian child "based on the biological parent, being a member of the tribe making the child eligible for membership," as well as a section of the tribe's membership act providing "every newborn child who is a Direct Descendent of an Original Enrollee shall be automatically admitted as a member of the Cherokee Nation for a period of 240 days following the birth of the child" for the "specific purpose of protection" under the ICWA.

On July 22, 2013, Jimmie and Robert served Judicial Council Forms, form ICWA-30 (Notice of Child Custody Proceeding for Indian Child), accompanied by an application and proposed order to terminate Justin's parental rights, on the Cherokee Nation of Oklahoma, the United Keetoowah Band of Cherokee Indians, the Eastern Band of Cherokee, the Sacramento Area Director of the Bureau of Indian Affairs, and the United States Department of the Interior.  They subsequently served the same parties with a notice of clerical errors correcting Justin's birth date and the time of the hearing, which had been entered incorrectly on the original form.

On August 1, 2013, the United Keetoowah Band sent a letter to Jimmie and Robert's counsel indicating the minor was not a descendant of anyone on that tribe's membership rolls, and it would not be intervening in the case.  On August 6, the Cherokee Nation sent a letter stating Justin was *not* a member of the tribe (contradicting the position taken in the June 18 letter), nor did he have a certificate of Indian blood.

On August 1, 2013, Justin submitted a letter to the court and parties stating he formally objected to the adoption and wanted to raise the minor.  He telephoned counsel for Jimmie and Robert on August 5 and indicated he would attend the August 12 hearing.  Justin confirmed he had received copies of the pleadings.

Justin appeared personally at the hearing held on August 12, 2013, and the court granted his request for appointed counsel.  His appointed counsel indicated Justin did not

believe he had been properly served under Oklahoma law, but did not move to quash service or dismiss the case for lack of valid service. Justin asked the court to order the minor returned to Oklahoma and requested visitation. The court ordered a visit that day and authorized Justin to appear telephonically at the next hearing. It also accepted mother's ICWA-compliant consent to the adoption, taken in the event the ICWA was determined to apply.

On August 14, 2013, mother submitted a declaration supporting the placement of the minor with her uncles in the event the ICWA was found to apply: "I believe, and ask the court to find, that my placement of [the minor] with my uncle, Jimmie . . . and his husband complies with the first level of preference in the ICWA: i.e., that a preference be given to placement with a member of the Indian child's extended family.[4] [¶] . . . I also understand that the law provides that if the placement of [the minor] with my uncle were found not to comply with the placement preferences of the ICWA, that the wishes of the parent of the child be given consideration in determining whether good cause exists for altering the statutory placement preferences. It is my extremely strong desire that [the minor] remain in the home in which I placed him, so that the adoption can be completed." Mother stated her uncles took excellent care of the minor and were allowing her to maintain a close relationship with him; that her uncles were open to a allowing a continuing relationship between the minor and Justin and his family as well; that her uncles had the ability to provide for the minor in ways neither she nor Justin could; that Justin, to her knowledge, has not been raised in a Native American culture, or by a Native American caretaker; and that her uncles had been in touch with a social worker from the Cherokee Nation and would assist the minor in learning about this aspect of his heritage.

On September 3, 2013, Justin filed a memorandum of points and authorities opposing the termination of his parental rights. He urged the court to find personal

---

4 Under 25 United States Code section 1915(a), "In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families."

6

service of the 30-day notice by the maternal grandmother was improper, arguing a professional process server was required for adoption-related documents under Oklahoma law. He also asserted the ICWA applied, which affected adoptive placement preferences and required a finding of likely serious emotional or physical damage to the minor before his rights could be terminated, as well as the provision of services necessary to prevent the termination of his parental rights. Justin indicated he had applied for membership in the Cherokee Nation and was waiting for his application to be processed, and had filed a paternity action in Oklahoma on August 23, 2013.

At a hearing on September 4, 2013, the court granted Jimmie and Robert's application to terminate Justin's parental rights and ordered the adoption could proceed without Justin's consent. It ruled the service of process of the 30-day notice was proper and Justin had failed to file a paternity action within 30 days of that notice. As to the ICWA, the court found (1) the minor was not an Indian child because neither Justin nor mother were enrolled members of the Cherokee Nation; and (2) assuming the minor did qualify as an Indian child, the ICWA's procedures for terminating parental rights did not apply because he was not being removed from the custody of an Indian parent.

### III. DISCUSSION

A. *Personal Jurisdiction, Notice and Due Process*

Justin argues the court did not have the power to make orders affecting his parental rights because he was not a resident of California and did not have sufficient contacts with the state for the court to exercise jurisdiction over his person in an action to terminate parental rights. We disagree.

When notice to an alleged or biological father is required under the UPA, it must be given "in accordance with the Code of Civil Procedure for the service of process in a civil action in this state at least 10 days before the date of the proceeding, except that publication or posting of the notice of the proceeding is not required. Proof of giving the notice shall be filed with the court before the petition is heard." (§ 7666, subd. (a).) The Code of Civil Procedure allows for service of a person outside California "in any manner provided in [article 3 of Title 5, Chapter 4 (article 3)] or by sending a copy of the

7

summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt." (Code Civ. Proc., § 415.40; see also *id.*, § 413.10 subd. (b) [summons may be served on a person outside the state "as provided in this chapter or as prescribed by the law of the place where the person is served"].) Four methods of service are listed in article 3: personal delivery, substitute service, service by mail with acknowledgement of receipt, or service by publication. (Code of Civ. Proc., §§ 415.10, 415.20, 415.30, 415.50.)

With respect to personal service, "A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery." (Code Civ. Proc., § 415.10.) "A summons may be served by any person who is at least 18 years of age and not a party to this action." (Code Civ. Proc., § 414.10.) Here, the maternal grandmother personally served Justin with a notice advising him an adoption proceeding was pending and his parental rights could be terminated if he did not file an action to determine the existence of a parent-child relationship within 30 days. The grandmother was over 18 and not a party to the action, making service appropriate under the Code of Civil Procedure.[5]

Having received actual notice an adoption proceeding was pending and his parental rights could be terminated, Justin appeared in court and requested visitation and an order returning the minor to Oklahoma. He submitted points and authorities urging the court to apply the ICWA, which he argued would affect placement preferences and the standard required for a termination of parental rights and adoption. A general appearance by a party will generally cure any defect in service and forfeits any objection based on a lack of personal jurisdiction. (*In re Marriage of Torres* (1998)

---

[5] Although Justin complained in the proceedings below that service was not valid under Oklahoma law, which requires delivery of notice for a plan of adoption to be made by a licensed process server (Okla. Stat. tit. 10, § 7503-3.1), he does not renew that claim on appeal. Nor does he renew his claim his mother should have been served because he was a minor at the time.

8

62 Cal.App.4th 1367, 1381 (*Torres*).) Justin's actions after receiving notice amount to a general appearance and forfeits his complaint regarding a lack of personal jurisdiction.

Justin argues his personal appearance at the hearing on August 12, 2013, did not amount to a general appearance because Code of Civil Procedure section 418.11 provides: "An appearance at a hearing at which ex parte relief is sought, or an appearance at a hearing for which an ex parte application for a provisional remedy is made, is not a general appearance and does not constitute a waiver of the right to make a motion [to quash] under Section 418.10." He reasons he objected to jurisdiction when he appeared on August 12, and the only other relief sought at the hearing was an attempt by the adoptive parents to obtain an ex parte order without requiring further notice to Justin, as well as an ex parte termination of his rights. (§§ 7666, subd. (b)(4), 7667, subd. (c)(3).) This overlooks Justin's subsequent efforts to have the court apply the elevated standards of the ICWA to the question of whether his rights should be terminated, an argument regarding the merits of the case that goes beyond an objection to personal jurisdiction.

Even if we were to conclude Justin did not forfeit his objection to the court's jurisdiction over him by making a general appearance, the court had the power to rule on the adoptive parents' petition under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (§ 3400 et seq.; formerly, Uniform Child Custody Jurisdiction Act (UCCJA)). The UCCJEA is the exclusive method of determining the proper forum for custody disputes involving other jurisdictions. (*In re Angel L.* (2008) 159 Cal.App.4th 1127, 1136 (*Angel L.*).) It applies to any "child custody proceeding," which it defines to include a "proceeding for . . . the termination of parental rights." (§ 3402, subd. (d); see *Angel L.*, *supra*, 159 Cal.App.4th at p. 1136.) The application by Jimmie and Robert to terminate Justin's rights is unquestionably a proceeding to terminate parental rights.

Under the UCCJEA, "Except as otherwise provided in Section 3424 [temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial custody determination only if any of the following are true: [¶] (1) This state is the home state of

9

the child on the date of the commencement of the proceeding . . . . [¶] (2) A court of another state does not have jurisdiction under paragraph (1) . . . ." (§ 3421, subd. (a).) With respect to a child such as the minor who is under six months of age when the proceeding was commenced, "home state" is defined as "the state in which a child lived [from birth] with a parent or a person acting as a parent . . . ." (§ 3402, subd. (g).) Because the minor had not lived with a parent in any one state since his birth, he did not have a home state under the UCCJEA and California could exercise jurisdiction under section 3421, subdivision (a)(2).

"The requirements of due process of law are met in a child custody proceeding when, in a court having subject matter jurisdiction over the dispute, the out-of-state parent is given notice and an opportunity to be heard. Personal jurisdiction over the parents is not required to make a binding custody determination, and a custody decision made in conformity with due process requirements is entitled to recognition by other states . . . ." (*Torres*, *supra*, 62 Cal.App.4th at p. 1378; see *In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1040; *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 493 [personal jurisdiction over a parent is not required for the court to issue a custody order under the UCCJEA].) "Notice required for the exercise of jurisdiction [under the UCCJEA] when a person is outside this state must be given in a manner prescribed by the law of this state for service of process or by the law of the state in which service is made." (§ 3408, subd. (a).) As we have already discussed, Justin was personally served with notice in conformity with California law.

A different result is not required by *Kulko v. California Superior Court* (1978) 436 U.S. 84, 91 (*Kulko*), on which Justin relies. In *Kulko,* the mother and father had lived with their children in New York state until they separated, at which time the mother moved to California with one child. The mother surreptitiously sent a plane ticket to the second child and, after he joined her, filed a marital dissolution action in California seeking full custody and child support. The father specially appeared and filed a motion to quash on the ground he was not a resident and his contacts with California were too minimal to confer personal jurisdiction. He raised this claim only with respect to

10

mother's request for increased support, and "did not contest the [California] court's jurisdiction for purposes of the custody determination." (*Id*. at p. 88.) The Supreme Court agreed with the father, finding his contacts with California were too tenuous under California's long-arm statute and the Constitution to establish the minimum nexus required for the imposition of financial obligations in a domestic relations case. (*Id*. at pp. 96-98; see also *Bartlett v. Superior Court* (1978) 86 Cal.App.3d 72, 74-77 [court properly granted out-of-state father's motion to quash county's complaint for child support and reimbursement of public funds for minor living with mother in California]; *Judd v. Superior Court* (1976) 60 Cal.App.3d 38, 41, 45 [court properly granted out-of-state father's motion to quash action by mother seeing increase in child support].)

*Kulko* involved a financial obligation, not a custody determination. In *In re Marriage of Leonard* (1981) 122 Cal.App.3d 443, 458-459, this court contrasted the issue in *Kulko* with child custody determinations under the UCCJA and concluded due process was not violated by an adjudication of custody issues by a court lacking personal jurisdiction. It reasoned: (1) The UCCJA had been enacted by 44 states to avoid jurisdictional competition, promote cooperation, and assure that resolution of a custody dispute takes place in the state with which the child and the child's family have the closest connection; (2) The stringent notice requirements of the UCCJA "quieted" the fundamental concerns of due process, adequate notice and an opportunity to be heard; (3) *Kulko*'s concern with subjecting the out-of-state party to the expense of litigation in another state was mitigated by requirements that one party pay the other's expenses under certain circumstances, as well as provisions minimizing the need for travel; (4) *Kulko*'s conclusion " 'California has not attempted to assert any particularized interest in trying [child support] cases in its courts by, e.g., enacting a special jurisdiction statute' " did not apply to custody determinations, the UCCJA being such a statute; and (5) *Kulko*'s concern "a party might incur financial liability for support by default, is entirely absent in a child custody proceeding." (*Ibid*.)

We reject Justin's suggestion the UCCJEA does not apply because Jimmie and Robert did not file declarations regarding the past and future residences of the minor and

11

the pendency of any related proceedings, as required by section 3429, subdivision (a). He presents no authority for his implied assertion the declaration is essential to trigger jurisdiction under the UCCJEA, and section 3429, subdivision (b) suggests otherwise by allowing the court to stay a proceeding on the motion of a party until such information is furnished. Justin did not file a motion to stay the proceeding on this ground.

In addition to his claims regarding the court's purported lack of personal jurisdiction to render orders regarding his parental rights to the minor, Justin argues the procedure for terminating his parental rights under the UPA deprived him of due process. We disagree. A biological father who has not established presumed father status has a limited due process right to seek a declaration of paternity. (*Michael M. v. Giovanna F.* (1992) 5 Cal.App.4th 1272, 1279-1280.) Justin was given notice of his right to file an action under section 7630 to determine the existence of a parental relationship within 30 days, but did not do so. If he had, he would have obtained a hearing on the merits of any claim he might have to be a presumed father.

Justin complains it was not fair to require him to file an action under section 7630 because such an affirmative act would have conferred personal jurisdiction where it was otherwise lacking. This argument is untenable in light of his general appearance in the action and the applicability of the UCCJEA, which gave the court the power to terminate Justin's parental rights even if it did not otherwise have personal jurisdiction over him.

Justin also argues the court erred in holding a hearing before issuing the order terminating his rights because section 7667, subdivision (c) provides for an ex parte order in a case where an alleged or biological father has been given notice but has not filed an action under section 7630 within 30 days. Although not entirely clear, he appears to take the position he received a greater chance to be heard than was accorded under the statutes. He does not explain, and we cannot fathom, how this could have resulted in any prejudice to his position. In a related vein, Justin suggests Jimmie and Robert waived their right to invoke the ex parte termination procedure by setting the case for a hearing. The scheduling of a court date did not change the standard under which the court could terminate parental rights.

B. *ICWA Compliance*

Justin argues the order terminating his parental rights must be reversed because the trial court did not comply with procedures mandated by the ICWA. Jimmie and Robert respond ICWA compliance was not required because, as the trial court found, the minor is not an Indian child. We need not decide whether the minor is an Indian child under the ICWA, because the United States Supreme Court has ruled that the provisions Justin seeks to invoke are not available to an Indian parent who never had custody.

The ICWA "protect[s] the best interests of Indian children and . . . promote[s] the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . ." (25 U.S.C. § 1902.) "In general, the ICWA applies to any state court proceeding involving the foster care or adoptive placement of, or the termination of parental rights to, an Indian child." (*In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338, citing 25 U.S.C. §§ 1903(1), 1911(a)-(c), 1912-1921.)

The ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) California law defines an Indian child "as provided in Section 1903 of the [ICWA]." (Welf. & Inst. Code, § 224.1, subd. (b).) Rule 5.482(c) of the California Rules of Court (rule 5.482(c)) additionally states: "If after notice has been provided as required by federal and state law a tribe responds indicating that the child is eligible for membership if certain steps are followed, the court must proceed as if the child is an Indian child and direct the appropriate individual or agency to provide active efforts under [California Rules of Court,] rule 5.484(c) to secure tribal membership for the child."

Justin acknowledges he was not a member of the Cherokee Nation (or any other tribe) when his parental rights were terminated, but argues the minor should have been treated as an Indian child because (1) the minor was a member of the Cherokee Nation

13

under its own policies, which granted him a temporary membership that expired 240 days after his birth unless he applied for tribal citizenship; and (2) the minor was eligible for membership in the Cherokee Nation as provided in rule 5.482(c).

As to the first contention, the only federal appeals court to consider the issue has concluded the sort of temporary membership offered to newborn children by the Cherokee Nation is insufficient to establish the child is an Indian child within the meaning of the ICWA. (*Nielson v. Ketchum* (10th Cir. 2011) 640 F.3d 1117, 1124-1125 (*Nielson*).) "The tribe cannot expand the reach of a federal statute by a tribal provision that extends automatic citizenship to the child of a nonmember of the tribe." (*Id*. at p. 1124.) The reasoning of *Nielson* would also seem to suggest that while California may provide greater protections for Indian children than federal law, it may not alter the definition of who qualifies as an Indian child to include minors whose parents are not members of a tribe, but who are themselves eligible for membership. (But see *In re Jack C.* (2011) 192 Cal.App.4th 967, 981 [rule 5.482(c) does not extend ICWA beyond jurisdictional limits].) Ultimately, however, we need not decide whether the minor's temporary membership in the Cherokee Nation or his eligibility for permanent membership required the court to treat the minor as an Indian child.

The order under review is one terminating Justin's parental rights. Assuming the minor is an Indian child, Justin was prejudiced only if the failure to designate the minor as such actually resulted in a failure to apply the protections afforded him under the ICWA. (See *In re Riva M.* (1991) 235 Cal.App.3d 403, 412-413 [failure to apply correct standard of proof when the ICWA applied was harmless]; *In re L.B.* (2003) 110 Cal.App.4th 1420, 1426 [when tribe has received notice, defects in notice subject to harmless error analysis].) As relevant here, the ICWA provides that parental rights to an Indian child cannot be terminated unless "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." (25 U.S.C. § 1912(d).) Also, the court may not terminate parental rights to an Indian child "in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of

qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (25 U.S.C. § 1912(f).)

In *Adoptive Couple v. Baby Girl* (2013) __ U.S. __ [133 S.Ct. 2552, 2557] (*Baby Girl*), the court held these provisions do not apply "when, as here, the relevant parent never had custody of the child." If "the adoption of an Indian child is voluntarily and lawfully initiated by a non-Indian parent with sole custodial rights, the ICWA's primary goal of preventing the unwarranted removal of Indian children and the dissolution of Indian families is not implicated." (*Id*. at p. 2561.) Moreover, the adoption placement preferences specified by the ICWA (25 U.S.C. § 1915(a)) "are inapplicable where no alternative party has formally sought to adopt the child. This is because there simply is no 'preference' to apply if no alternative party that is eligible to be preferred under § 1915(a) has come forward." (*Baby Girl*, at p. 2564.)

The court was not required to provide remedial services to Justin or find a risk of emotional or physical damage beyond a reasonable doubt because Justin never had physical or legal custody of the minor. Moreover, Justin cannot assert the ICWA required a different adoptive placement because no other party has formally sought to adopt the child.[6]

In light of our conclusion, we need not address Justin's contention the trial court should have waited 60 days after it sent notice to the Cherokee Nation and other Indian

---

[6] Because the ICWA (25 U.S.C. § 1915(a)) gives an adoptive placement preference to a "member of the child's extended family" it may well be that Jimmie, as the biological great uncle of the minor, would qualify for preference in any event. (See 25 U.S.C § 1903(2) [" 'extended family member' shall be defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent"]; *In re Liliana S.* (2004) 115 Cal.App.4th 585, 590 [affirming order placing minor with paternal grandmother for adoption though she was not tribal member; tribe's internal resolution that only Indian relatives be considered was contrary to 25 U.S.C. § 1915's placement preferences].)

15

tribes before determining the minor's Indian child status.  (See Welf. & Inst. Code, § 224.3, subd. (e)(3).)

C.  *Motions on Appeal*

Justin filed a motion on February 27, 2014 asking this court to take additional evidence on appeal, by which he seeks to demonstrate he was enrolled as a member of the Cherokee Nation after the court issued its order terminating his parental rights.  (Code Civ. Proc., § 909.)  We deny this motion as moot because regardless of his current tribal membership status, he never had custody of the minor and was not, under the *Baby Girl* decision, entitled to the provision of remedial services or the application of the ICWA standard for a termination of parental rights.

On June 17, 2014, Justin filed a request to file a supplemental letter brief, responding to Jimmie and Robert's citation of additional authorities under rule 8.254(a) of the California Rules of Court—specifically, the decision in *In re Abbigail A.* (2014) 226 Cal.App.4th 1450, review granted September 10, 2014 (S220187).  Because our Supreme Court has granted review of the case at issue, it is no longer citable and we deny the request as moot.

Jimmie and Robert filed a motion on February 7, 2014, asking this court to augment the record or take judicial notice of transcripts from hearings leading to their appointment as the minor's legal guardian pending the finalization of the adoption.  They contend these documents demonstrate any error in terminating Justin's rights was harmless, because the evidence at the hearing showed Justin had sexually abused his stepsister and could not have obtained legal custody or prevented the adoption from going forward, even if he had filed a paternity action under the UPA and even if the ICWA had been applied.  We deny the motion as moot in light of our affirmance of the challenged order on other grounds.

On April 10, 2014, Jimmie and Robert filed a request for judicial notice of the legislative history of ICWA.  We deny the request as unnecessary to our decision.

## IV.  DISPOSITION

The judgment is affirmed.

_____

NEEDHAM, J.

We concur.

_____

JONES, P. J.

_____

BRUINIERS, J.